The Chancellor.
The bill is filed by and on behalf of the legatees under the will of John Savidge, deceased, to recover legacies bequeathed by said will. The personal estate of the testator, after the payment of debts and funeral expenses, having proved insufficient to satisfy the legacies, the bill prays that the legacies may be declared a charge upon the real estate, and that so much of the real estate not specifically devised as may be necessary for that purpose be sold, and the proceeds appropriated in satisfaction of the legacies. The material question in the cause is, whether the legacies constitute a charge upon the real estate of the testator.
The provisions of the will, so far as they are pertinent to the question under consideration, are as follows: The testator first directs that all his just debts and funeral expenses should be paid by his executors. He then gives to his wife the sum of two thousand dollars, and as much of the household furniture as she may think proper to take. Also the house and lot in which the testator then resided, to hold during her life. After the bequest of numerous, pecuniary legacies, amounting together to $4150, the testator directs that on the death of his wife the house and lot devised to her should be sold, and the money equally divided between four legatees specified in the will. The concluding clause of the will is as follows: “And I do nominate and appoint my brother-in-law,. J. S. L. and T. H., R. executors to this, my last will and testament, investing them with all power necessary to execute that ample trust, hereby revoking and making void all former wills made by me.”
The following facts are also established by the evidence in the cause: The inventory and appraisement of the testa-
tor’s personal estate amounted to $4767. The chattels specifically bequeathed to the widow, and taken by her, were appraised at $270. The debts and funeral expenses were *128 $292. These deductions leave the net personal estate, exclusive of the first costs of administrators, $4205,, to be appropriated towárd the payment of the legacies, and show a deficiency for that purpose of more than $2000: In addition to the house and lot devised to his wife, the testator died seized of four several tracts or parcels of land, containing over fifty-five acres, which are mot mentioned in his will. He left no children, and having no inheritable blood, could leave no collateral heirs. The land in regard to which he died intestate, if not applied in satisfaction of the legacies, escheats to the state. It is further proved by the scrivener who wrote the will, and who is one of the subscribing witnesses, that after the will was written, and before it was executed, the testator desired the witness to run over the addition made by the testator of the amount of the legacies, to see that he had made no mistake. He had in his hand a memorandum containing the names of the legatees, and the amount of the legacy to each. He had the personal property put down on the memorandum at a certain amount, and the number of acres of his real estate. He asked me, the witness adds, what my opinion was as to its value — he had estimated it at $40 per acre — and asked me if he had valued it too high. I told Mm no> — it was worth that at that time. In making this estimate, he had not embraced the property left to the widow. I told him it overbalanced the amount he had willed away by some- two. or three hundred dollars. I think he then said that it would pay the expenses of settling up his estate. The personal property that he had upon the memorandum was not sufficient to pay the legacies, but was some two thousand dollars short, and the land was valued at about that amount. The object in making the valuation of In's real estate was to see if he had property enough to pay the legacies. He said he did not want to will away more than he had property to pay. He said that the real estate he had mentioned wohld have to be sold, and he wanted to know if he had overvalued it.....I supposed the expression in the will, giving his executors all power neces *129 sary to execute that ample trust, authorized them to sell the real estate, which was the desire and intention of the deceased. Had I not so supposed, I should have endeavored to express the wishes and intention of the deceased more distinctly, and would have mentioned the fact to him.
Personal estate is the primary fund out of which legacies are payable. The real estate is no.t charged with the payment of legacies, unless the testator intended it should be; and that intention must be either expressly declared, or fairly and satisfactorily inferred from the language and dispositions of the will. Van Winkle v. Van Houten, 2 Green's Ch. R. 186; White v. Ex’rs of Olden, 3 Green’s Ch. R. 356; Wright v. Denn, 10 Wheaton 204; Lupton v. Lupton, 2 Johns. Ch. R. 623; 1 White & Tudor’s Leading Cases 540.
The will in question contains no express declaration of the testator’s intention that the real estate should either be charged with or sold for the payment of the legacies. Hor does the will contain any of the clauses which are ordinarily relied upon as manifesting that intention. The only expression in the will which tends to manifest such intention is contained in the clause in which the testator appoints his executors, “ investing them, with all power necessary to execute that ample trust.” It is urged, on the part of the complainants, that no power was necessary to be conferred upon the executors except the power to sell real estate, and that the power conferred was given to enable them to execute the entire trust reposed in them, and consequently to pay not only the debts but the legacies; and in this view the clause is regarded as tantamount to an express authority conferred on the executors to sell the real estate for the payment of the legacies. The clause may admit of this construction, but it is by no means a necessary interpretation, nor perhaps the most obvious one. Regarding the clause as conferring upon the executors power to sell real estate for the purposes of the will, the provision is fully satisfied by applying it to that part of the will which directs the real estate given to the wife for life to be sold after her death, and the proceeds to *130 be divided among certain legatees. Or if it be admitted that the phrase “to execute that ample trust” has a broader meaning, and imports that the executors were empowered to execute the whole will, to do everything which it was the testator’s will should be done after his death, the question still recurs, what was the trust conferred on his executors ? Was it his will that the land should be sold to pay the legacies ? The clause in question does not satisfactorily answer the question. It is not claimed that the clause is sufficient to charge the legacies on the land devised to the wife. And if that were all the land of which the testator died seized, as upon the face of the will alone, unaided by oral testimony, it must be assumed to be, the legacies could not be held to be a charge upon the land. If, then, the intent of the testator must be sought in the will alone, to the exclusion of all extrinsic facts, it must, I think, be held that the real estate cannot be sold for the payment of the legacies. If the construction contended for is to be given to the will, it must be by the aid of extrinsic facts. In support of the construction sought to be put .upon the language of the will by the complainant, parol evidence has been offered of the testator’s declarations of his intention, of the nature and amount of his estate, of his family relations, and other extrinsic circumstances. Is such evidence admissible ?
So far as the evidence relates to the declarations of the testator as to his meaning and intention, or to the instructions given to the scrivener, or to the understanding of those instructions by the scrivener, the evidence is clearly incompetent, and must be overruled. Parol cotemporaneous evidence is inadmissible to contradict or vary the terms of any valid written instrument. 1 Greenl. Ev., § 275; 2 Phil. & Amos on Ev. 753; Coxe v. Bennet, 1 Given 167.
The rule applies to all written contracts, whether required by the statute of frauds to be in writing or not. Such evidence is admissible only for the purpose of removing or explaining a latent ambiguity.
In regard to wills the rule is inflexible, that parol evi *131 donee of tlio testator’s intention is inadmissible, not only because tlie written instrument which he has made the depository of his meaning is the best evidence of his intention, but because wills are required by the statute of frauds to be in ■writing attested by subscribing witnesses. 1 Greenl. Ev., § 289, 290; Hiscocks v. Hiscocks, 3 Mees. & W. 363; Yard v. Carman, Penn. 936; Den v. Van Cleve, 4 Wash. 262.
Whether parol evidence is admissible as to the amount and nature of the testator’s estate or other extrinsic circumstances, in order to ascertain the testator’s intention to charge legacies upon real estate or to exonerate the personalty, the authorities are by no means agreed.' The decided weight of the English authorities would seem to be against it. Stephenson v. Heathcote, 4 Eden 43, and cases cited, note (a); Ancaster v. Mayer, 1 Pro. C. C. 466; Brummel v. Prothero, 3 Vesey 111; Aldridge v. Lord Wallscourt, 1 Ball & B. 315; Booth v. Blundell, 1 Mer. 164; Parker v. Fearnley, 2 Sim. & Stu. 592: see, also, Tole v. Hardy, 6 Cowen 341.
In Stephenson v. Heathcote, Lord Keeper Henley said: The intention of the testator must be discovered from the words of the will itself, and not from extrinsic circumstances. Wo are not to inquire into the amount of the personal estate to know whether it be or be not sufficient to pay the testator’s debts; because that would be to establish a general rule, that in every case where the personal estate insufficient, it must be presumed to be the testator’s intention to charge his real estate wdtli the payment of all his debts. Besides the personal estate is vague and uncertain, and subject to great fluctuations; few men know what their personal estate is.
And in the comparatively recent case of Parker v. Fearnley, 2 Sim. & Stuart 592, the Vice Chancellor said, “the court cannot take into consideration the amount of the personal estate.”
The authorities are, however, by no means uniform. In Stapleton v. Colville, Forester 202, which is one of the earliest reported cases on this subject, the question was, whether the testator, by his will, had charged the debts upon the real *132 estate in exoneration of the personalty. The single question, said Lord Chancellor Talhot, for the judgment of the court is, whether the personal estate shall or shall not be liable to the payment of the testator’s debts. What the quantum of the debts or the amount of the personal estate was at the testator’s death does not appear} if it did, it would give a great light into this matter. He thus took it as clear that such an examination could be gone into, although he declares, in the same opinion, that the testator’s intent must govern, and that intent be collected from the will itself. See Ancaster v. Mayer, 1 Brown’s Ch. Cas. 466; Dyose v. Dyose, 1 P. W 305; Noel v. Noel, 12 Brice 213.
But, whatever may be the rule of evidence elsewhere, it is well settled, in this court at least, that such evidence is admissible.
In Van Winkle v. Van Houten, 2 Green’s Ch. R. 186, Chancellor Vroom, in regard to the rule adopted by Vice Chancellor Leach in Barker v. Fearnley, said, “this principle is too limited to be practically useful.” — “ In ascertaining the intention of the testator, where he has not charged his lands explicitly with the payment of debts or legacies, we must be governed not only by the expressions of the will, but the situation of the property disposed of and the person taking it.”
In White v. Executors of Olden, 3 Green’s Ch. R. 362, Chancellor Pennington enumerates, as one of the grounds of his opinion for charging the legacies upon the real estate, the character of the legacies and the relations in which the legatees stood to the testator.
In Adamson v. Ayres, 1 Halst. Ch. R. 353, upon a question of intention, Chancellor Halsted said: The situation of the estate, as to the comparative amounts of realty and personalty, might certainly be shown. Suppose the estate consisted of $100 in land and $10,000 in personalty, the court would not shut its eyes to' that fact; and it would have a legitimate influence on the reading of the will.
In Snyder v. Warbasse, 3 Stock. 466, Chancellor William *133 son said: in searching for the intention of the testator, we are not confined to the will itself, but may look at the situation of the property disposed of and the persons taking it.
These cases clearly show that, by the course of adjudication in this state upon a question of intention, parol evidence of the situation of the property disposed of, and of the persons taking it, is admissible.
There is a further rule of evidence applicable to a part of the testimony offered on the part of the complainants, viz. that in order to discover the intention of the testator, the court may put themselves in the place of the party, and then see how the terms of the instrument affect the property or subject matter. With this view evidence is admissible of all the circumstances surrounding the author of the instrument. 1 Greenl. Ev., § 287.
Applying these principles to the evidence offered in this cause, and excluding all the evidence on the part of the complainant not falling fairly within the operation of the principles, it appears that at the date of the will the testator’s personal property was entirely inadequate to satisl'y the legacies given by the will, and so continued till the time of the testator’s death. With the exception of the house and lot specifically devised, the testator made no disposition whatever of his real estate. The amount of the legacies given by the testator, making a reasonable allowance for the costs and expenses of settling his estate, was equal to the combined value of his personal and real estate not specifically devised. This relation of the amount of the legacies to the vahío of 1ns real and personal estate was not fortuitous, but the result of design. At the time of making his will, the testator had before him a schedule of his personal and real estate not otherwise disposed of, with an estimate of the value of the real estate. The relation thus existing between the amount of the legacies and the value of the real and personal estate continued without material change till the time of the testator’s death. And not only were the legacies bequeathed to an amount equal to the value of the personal *134 and real estate, but unless the legacies'are made-a charge upon the land, and the last clause of the will so construed as to. give power to the executors to sell the real estate for the purpose of paying the legacies, the testator died intestate as to. the bulk of his real estate. A will ought not to be so construed as to produce such intestacy. The natural and reasonable presumption is, that.when a will is executed the 'testator designs' to dispose of his entire estate, and does not intend to die intestate as to any part of his property. These circumstances create -a strong impression that the testator designed to charge the legacies upon the real estate. But standing alone, I think they- are not sufficient upon well settled rules of construction to subject the land to the ¡payment of legacies. Heirs have always been looked upon with favor by courts of justice, and the rule is well settled, that plain words are required to disinherit them; and as plain words are necessary to disinherit an heir, so words equally plain are requisite to charge the estate of an heir; for a charge is pro tanto a disinherison of the heir. Davis v. Gardiner, 2 P. W. 188; 1 Roper on Legacies 671.
If, therefore, there was an heir to take the estate undisposed of by the will, the legal presumption would be that it was not the design of the testator that he should be disinherited or the inheritance charged with legacies. But in this case the testator had no inheritable blood. He left no lineal descendants* He therefore neither had, nor by legal possibility could have, any heir to whom the estate in case of intestacy could descend. It must escheat to the state. The -legal presumption in favor of the heir does not exist to influence the construction. And the only question is, whether the testator intended that the legacies which he had 'given to the objects of his bounty should fail, and his lands escheat to the state, or whether the real estate should be applied to carry into effect the trust which he had created. The case is one of first impression. It obviously is of very rare occurrence. But I am clear that there is no reason to doubt the intention of- the testator, or that the .charge of the *135 legacies upon the real estate will be sustained by sound legal principle.
The legacies constitute a charge upon so much of the real estate only as was not devised by the testator, and not upon the lands specifically devised. When the legacies are charged upon the land, and there are specific and residuary devises, the legacies will not be charged upon the lands specifically devised. Spong v. Spong, 1 Dow & Clark 365; 2 Jarman 530.
The complainants aro entitled to a decree pursuant to the prayer of their bill.