29 N.J. Super. 209 (1954)
102 A.2d 101
SHIRLEY ARENOFSKY, PLAINTIFF-RESPONDENT,
v.
BARNEY ARENOFSKY, EXECUTOR OF THE LAST WILL AND TESTAMENT OF DAVID ARENOFSKY, DECEASED, HAROLD ARENOFSKY, BARNEY ARENOFSKY, LOUIS ARENOFSKY AND HYMAN ARENOFSKY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1953.
Decided January 7, 1954.
*211 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Sydney Isadore Turtz argued the cause for the respondent (Messrs. Cohen & Turtz, attorneys).
Mr. Maurice C. Brigadier argued the cause for the appellants (Mr. Joseph Moritz, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
The Chancery Division, in construing decedent's will, found that a certain specific bequest had been adeemed. The legatees and the executor appeal.
On November 29, 1950 the testator, David Arenofsky, executed his last will and testament. At this time he was a member of a partnership doing business under the trade name Max Arenofsky Sons. The firm had been inherited in equal *212 shares by the testator and his five brothers from their father, Max Arenofsky, who founded it. Two stores were operated for the retail sale of hats, one at 521 Broadway, Bayonne, N.J., and the other at 202 Richmond Avenue, Staten Island, N.Y.
The will provided:
"2. I give and bequeath all of my right, title and interest in and to my share in the business known as M. Arenofsky Sons and also known as Max the Hatter, which business is now conducted at 521 Broadway, Bayonne, New Jersey and at 202 Richmond Avenue, Staten Island, New York, including the good will and other assets of said business to my brothers Harold Arenofsky, Barney Arenofsky, Louis Arenofsky and Hyman Arenofsky, share and share alike and only to such brothers who should survive me, subject, however, to the provisions hereinafter set forth.
3. I hereby direct that my executor hereinafter named shall pay to my wife, Shirley, out of my share of the profits of said business, such amount as he may deem proper for her support and maintenance during her life time or until she remarries.
4. I further direct my executor that in the event I should have a child or children, then my said executor shall pay to such child or children out of my share of the profits of said business such amount as he may deem proper and necessary for the support and maintenance of such child or children until having attained the age of 21 years.
5. I hereby give, devise and bequeath all of the rest, residue and remainder of my estate, whether real or personal and wheresoever situate to my wife Shirley."
Prior to the execution of the will on November 21, 1950 one of the brothers, Abraham Arenofsky, died intestate and his widow was appointed administratrix of his estate. On March 16, 1951, which was subsequent to the incorporation hereafter referred to, the widow individually and as administratrix transferred Abraham's interest by bill of sale to the surviving brothers individually.
On January 26, 1951, less than two months after David's will was drawn, the brothers formed a corporation under the name M. Arenofsky Sons. They transferred their respective interests to it in exchange for stock, each receiving an equal number of shares. The corporation continued to operate the identical business and at the same locations.
*213 David Arenofsky died on September 11, 1951, leaving only his widow, Shirley, surviving. His will was probated and Barney Arenofsky qualified as executor.
The widow, Shirley, instituted this action seeking, among other things, a construction of the will and a judgment that the executor is required thereunder "to contribute a proper amount" for her support "out of said businesses" during her lifetime, or until she remarries.
The trial court decided that the effect of the creation of the corporation and the transfer to it of the decedent's equal share of the partnership and the receipt in return therefor of shares of stock was to adeem the bequest of the partnership interest. Then he concluded that the title to the shares of stock passed to the widow as sole residuary legatee.
The test of ademption of a specific legacy in this State is whether the subject is "lost, destroyed, or subsequently disposed of by testator, or so altered in form, by testator's subsequent acts, as to indicate a change of testamentary intent on his part. Conversely, if the subject, although somewhat changed in form, be not sufficiently changed to indicate change of testamentary intent, there is no ademption." Chase National Bank v. Deichmiller, 107 N.J. Eq. 379, 382 (Ch. 1930); In re Cooper's Estate, 95 N.J. Eq. 210 (E. & A. 1923); Annotation, 16 A.L.R.2d 1404.
Respondent contends here that the change of the decedent's interest from a share in a partnership to a like share in a corporation, even though organized by the members of the partnership and conducting the identical business at the same locations, constitutes such a substantial metamorphosis in the subject matter of the legacy as to indicate an implied revocation thereof by circumstances. We think not.
Manifestly, the testator's interest in the corporation remained precisely the same as it had been in the partnership. The alteration was in form only. And there is no substantial evidence in the surrounding circumstances either before or after the execution of the will or until his death which *214 demonstrates an intention on his part to consider his interest in the corporation as different from that in the partnership. His share was in the business, and the form it took on under the facts presented here is immaterial.
Our cases clearly support this view. In Donath v. Shaw, 132 N.J. Eq. 545 (Ch. 1942), it appeared that the testator, who was president and controlling stockholder, bequeathed shares of stock in his corporation to the value of $25,000 to certain of the stockholders who would be living at his death. Later he caused this corporation to be dissolved and a new one organized to take over all of its assets and liabilities and to continue the business. The stockholders and their respective interests remained the same, the same officers continued and the business was uninterrupted. On his death the claim was made that the legacy was adeemed because the stock in the first corporation was non-existent. Vice-Chancellor Berry declared that there was no difficulty with either the identity of the gift or the takers thereof; the business remained the same except for some insubstantial change in form and that the new stock stood in the place of the old. Consequently, no ademption had taken place.
Latorraca v. Latorraca, reported in the same volume, is much to the same effect. 132 N.J. Eq. 40 (Ch. 1942), affirmed on opinion below, 133 N.J. Eq. 298 (E. & A. 1943). There the testator owned and operated a wholesale grocery business under a trade name. After the execution of his will, which dealt specifically with some assets of the business, he formed a corporation and transferred the business to it in return for all of its corporate stock.
To the suggestion of ademption, this answer was given (p. 43):
"* * * In the suit before me, there has been no loss of the things given, no change in their form or substance. The only change has been in the manner in which testator exercised dominion. He had legal title at the date of his will; at his death, he owned the corporation which had title. This alteration does not render the executor unable to execute the specific bequests or to carry out the testator's other directions respecting the business, since he *215 controls the corporation, and it does not indicate a change in testamentary intention."
A Pennsylvania case is closely analogous. In In re Gerlach's Estate, 364 Pa. 207, 72 A.2d 271, 16 A.L.R.2d 1397 (1950), the will involved provided:
"I give, devise and bequeath all my right, title and interest in my business, known as the Allentown Supply Company, to the following in equal shares absolutely. * * *"
At the time of its execution the Supply Company was a partnership consisting of two persons, Gerlach holding the much greater interest. About two and one-half months later, the business was incorporated under the name Allentown Supply Corporation. Gerlach received 15,000 shares of stock valued at $120,000 and the other partner 33 shares worth $264.
In disposing of the contention that ademption resulted from the incorporation, the Supreme Court of Pennsylvania said:
"* * * As the court below properly held, however, the change from partnership to corporation was one of form rather than of substance * * *. Whether as a partnership or as a corporation it was always Gerlach's business; the interest originally of Bitting and Pratt, and subsequently of Pratt alone, was practically negligible; there was never any change in the identity of the enterprise, which, to Gerlach, was always `my business.' (p. 273)

* * * * * * * *
What the testator bequeathed in the present case was not an interest in a partnership as such, nor in a corporation as such, but an interest in his business as it existed at the time of his death,  in his business enterprise, whatever its form. Since his interest in the corporation remained the same as his interest in the partnership, and since no change of any kind took place in the operation of the business, no ademption of the legacy resulted." (p. 274)
The conclusion that no ademption occurred in the present case and that the decedent's stock must follow the direction of the will faces us with a more difficult problem. What are the respective interests of the decedent's brothers as legatees of the stock, and does the widow have any interest therein? *216 Determination of these questions requires a search for the intention of the decedent. The language he used is inartistic and ambiguous but in seeking his intention we may and should utilize the entire instrument and all of the surrounding circumstances in view of which he must have acted in making his will. In re Armour's Estate, 11 N.J. 257, 271, 272 (1953); Busch v. Plews, 12 N.J. 352, 358 (1953); Fink v. Harder, 111 N.J. Eq. 439 (E. & A. 1932); Budd v. Wilson, 61 N.J. Eq. 246, 249 (Ch. 1900); Leigh v. Savidge's Ex'rs, 14 N.J. Eq. 124 (Ch. 1861); Annotation, 94 A.L.R. 215; Clapp, Wills and Administration, § 108 (5 N.J. Practice 248).
Paragraph 2, down to the qualifying language beginning with the word "subject," shows a disposition to give to the surviving brothers ownership of his share in the business, and all the incidents thereof, including such control as the share represented. It must be recalled as a circumstance which existed when the will was prepared, that one brother, Abraham, had died about one week earlier, without a will, and that his widow and children thus acquired an interest in and a measure of control of the future operation of the business, if it was to continue as a partnership. This interest had not yet been acquired when decedent executed his testament and it is a fair inference that he was conscious of the complications that had been presented by the appearance in the business of his brother's family.
The language employed in the paragraph under discussion is consistent with this factual background and manifests a clear intention to keep ownership and control of the business in the brothers.
However, it is just as plain from the clause "subject, however, to the provisions hereinafter set forth" and from paragraphs 3 and 4 of the instrument, that no intention existed to transfer immediately his share of the results of the operation of the business, that is, of the profits, to them. Clearly, he wished his widow, and children, if any were born subsequent to the will, to be apart from the operation and control of the enterprise, but to succeed to his share of the *217 profits for their support and maintenance. As it turned out, the reference to children probably was nurtured by hope, because he died childless; his widow alone survived him.
On this phase of the appeal appellants contend that ademption not having taken place, the stock passes unqualifiedly to the brothers because paragraph 3 is so ambiguous and vague as to be incapable of determination. Respondent urges that if there was no ademption, reading paragraphs 2 and 3 together, as must be done in seeking out the true nature of the intended disposition of the stock, the will becomes so vague and uncertain as to be impossible of effectuation. So she argues that no valid bequest of the stock was made and thus it becomes her property as residuary legatee.
The law never abandons a testator where it is possible to effectuate the intention manifested by his will, without doing violence to its language or in effect rewriting the instrument. Johnson v. Haldane, 95 N.J. Eq. 404 (Ch. 1924); Rogers' Ex'rs v. Rogers, 49 N.J. Eq. 98 (Ch. 1891); Clapp, supra, § 108, p. 251. We have no hesitancy in concluding that paragraphs 2 and 3 must be read together and that a testamentary intent clearly emerges therefrom to give the stock to his brothers but to retain the share of the profits represented thereby for the widow's proper support and maintenance.
The language used is not such as to indicate transfer of the title to the stock in trust. A conclusion more consistent therewith is that decedent intended to impose an equitable charge thereon to secure the payment of the profits to the executor to be distributed by him in such amount as he deems proper for her support and maintenance. In studying the words it is necessary to have in mind that provisions in a will for the widow's benefit should be construed liberally in her behalf. As Corpus Juris puts the doctrine:
"* * * It has been held that the fact that a testator owed his wife protection and support raises a presumption that he intended to make ample provision for her in his will, and an intention to leave his widow without means of support will be attributed to a testator only when clearly expressed. * * *." (69 C.J., Wills, § 1151, p. 102.)
*218 Volume 1 of Scott on Trusts discusses the distinction between trusts and equitable charges as follows:
"If a testator devises or bequeaths property subject to the payment of certain sums of money to third persons, he thereby creates an equitable charge, not a trust. An equitable charge is like a trust in that in each case the legal title to property is vested in one person and an equitable interest in the property is given to another. * * *

* * * * * * * *
The duty of a devisee subject to an equitable charge with respect to the property is a negative one; he must not so deal with the property as to destroy or interfere with the equitable lien of the encumbrancer, as for example by transferring it to a purchaser for value and without notice of the charge." (§ 10)
And further:
"The property subject to the charge may be personal as well as real property. An equitable charge may be created for the payment of debts or legacies; it may be created for the payment of a single sum of money or for the payment of an annuity; it may be created to secure the performance of other acts than the payment of money, as for example to secure an annual payment of a certain number of bales of cotton." (§ 10.3, p. 75)
A somewhat similar situation was presented in D'Arcangelo v. D'Arcangelo, 137 N.J. Eq. 63 (Ch. 1945). There the testator bequeathed "all my interest in the jitney bus business that I am now conducting" to his sons, with the direction that they engage his brother as a driver and pay him a specified salary; and further, if this brother became unable to work because of sickness or old age, the sons should pay him a pension of $20 a week for life.
The business was owned and operated by the D'Arcangelo Bus Company, a corporation, in which decedent held 18 out of its 20 outstanding shares of stock. The court declared that when the decedent spoke of "all my interest" he meant his stock in the corporation. The order to engage the brother as a driver was adjudged unenforceable for reasons not now pertinent. However, as to the pension, the court said:
"* * * The direction for payment is addressed to his two sons, to whom is given the stock in the corporation. The court *219 should, if possible, give effect to all the provisions of a will, and should consider the pension as a personal obligation of the sons, or as a legacy, and not as an invalid attempt to charge the corporation. To Samuel and Gilbert, therefore, rather than to the corporation, Federico must look.
Where real estate is devised to a person who is directed to pay a legacy, the legacy is an equitable charge upon the devise unless a contrary intention is expressed in the will or can be fairly implied from its provisions. [Citing cases.] The same rule applies upon a gift of personalty to a person who is directed to make a payment to another. A charge is implied. But, in my opinion, the charge in favor of Federico does not extend to the residuary estate. In the will, Federico's annuity is coupled with the gift of the bus business, while the residue is a separate gift, entirely independent. The annuity or pension is a charge upon, and payable out of, the bus shares."
Cf. Budd v. Wilson, 61 N.J. Eq. 246 (Ch. 1900); Wyckoff v. Wyckoff, 48 N.J. Eq. 113 (Ch. 1891), affirmed 49 N.J. Eq. 344 (E. & A. 1892); Tichenor v. Tichenor, 41 N.J. Eq. 39 (Ch. 1886); Leigh v. Savidge's Estate, 14 N.J. Eq. 124 (Ch. 1861); Cox v. Corkendall, 13 N.J. Eq. 138 (Ch. 1860).
It is true in our case that the testator did not expressly burden the stock or his interest in the business with the payment of the profits thereon or therefrom for his widow's maintenance. However, the whole will fairly breathes such an implication and it is the duty of this court to give heed thereto. Accordingly, we hold that the bequest of the stock is subject to and charged with the payment of the dividends thereon to the executor to be turned over to the widow in "such amount as he may deem proper for her support and maintenance during her lifetime or until she remarries."
Of course, the brothers have an election to take or reject the legacy. They are not required to accept; but if they do accept, they must assume the accompanying equitable charge. Hoffman v. Friend, 92 N.J. Eq. 60, 63 (Ch. 1921), affirmed 92 N.J. Eq. 452 (E. & A. 1921).
How is the duty of the executor to be exercised? And if all of the profits or dividends he receives on the stock are not used for the widow's support, what becomes of the balance?
*220 It is obvious that the executor is invested with discretion in fixing the proper amount to be paid to the widow. However, the discretion should not be exercised arbitrarily but fairly and reasonably in the light of the will. The reasonable conclusion is that decedent wanted his widow supported out of his share of the profits of the business, if possible, and the management and control of the business vested exclusively in his surviving brothers. In other words, his wish was that the interest in the business assume the burden that was his, namely, to support his wife. And plainly it was his intention that this should be done without regard to the portion of his estate, if any, which would come to her under the residuary clause.
Thus, in order to accomplish the purpose, the legatees should pay all of the dividends on the stock arising from the proper management of the business to the executor during the widow's lifetime or until she remarries. The executor shall determine the proper amount necessary for her support and pay it to her. Any surplus in a given period shall be retained by him for such purpose if and when there is insufficient income from the stock. And if there is a balance remaining at the widow's death or remarriage, it belongs in equal parts to the legatee brothers since it represents overpayment of the equitable charge.
For the reasons stated, the judgment is reversed.