FIRST NATIONAL BANK AND TRUST COMPANY OF WYOMING, a corporation, and Becky Boehler, Appellants (Defendants below),

v.

Donald B. FINKBINER, Harold R. Finkbiner, and Dorothy E. MacDougall, Appellees (Plaintiffs below).

Donald B. FINKBINER, Harold R. Finkbiner, and Dorothy E. MacDougall, Appellants (Plaintiffs below),

v.

FIRST NATIONAL BANK AND TRUST COMPANY OF WYOMING, a corporation, and Becky Boehler, Appellees (Defendants below).

Nos. 3458, 3459.

Supreme Court of Wyoming.

July 1, 1966.

Loomis, Lazear, Wilson & Pickett and Frederick G. Loomis, Cheyenne, for appellants and appellees.

Kline & Tilker and Arthur Kline, Cheyenne, for appellees and appellants.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiffs, as the remaindermen of an inter vivos trust, commenced an action for a declaratory judgment and other relief against the bank, as trustee, and against Becky Boehler,[1] as the life beneficiary, claiming that the trustee was administering the trust in violation of the rights of the remaindermen. The basis of plaintiffs' claim to a large extent is dependent upon the power conferred upon the trustee by a provision in the trust authorizing the trustee to invade principal for the proper care and support of Becky. The joint answer and counterclaim of the defendants also requested the court to construe such provision and determine the rights, duties, and legal relation of all the parties to the ac-

1. To avoid confusion we shall usually hereafter refer to this defendant as "Becky."

tion. The judgment entered by the trial court failed in certain respects to satisfy either the plaintiffs or the defendants and as a consequence both parties have appealed.

The facts essential to a general understanding of the controversy are not in dispute. The trust was created in the year 1929 by John Huckfeldt. Becky was his wife. They had married in the year 1918.

Turning to the pertinent provisions of the trust instrument, we discover it was first directed that the net income of the trust should be paid to Becky. It was then provided that upon her death the accumulated income and principal were to be paid to his sister, Alma Finkbiner, and in the event of her death prior to termination of the trust the proceeds were to be distributed to her surviving children, who are now the plaintiffs and the remaindermen. It was further provided, and this is the provision forming the crux of the controversy, that:

"The power is hereby given the Trustee in its sole discretion to advance to the wife of the Grantor from time to time such portions of the principal of the said trust fund as in its judgment may be necessary for her proper care and support, and the Trustee in so doing is wholly protected and shall be liable to no one."

Grantor also reserved the right to amend or revoke the trust during his lifetime.

The trust was funded in the year 1936, upon the death of grantor. The principal received by the trustee was in the sum of $35,405.32. In addition to the benefits conferred by the trust and also as a result of the death of her husband, Becky received 83 shares of American Telephone and Telegraph Company stock, the proceeds of life insurance policies in the sum of $14,000, and the proceeds of a joint checking account in the approximate sum of $4,000. The home in which the couple resided was in the name of Becky.

The trustee from the year 1936 to 1952 made monthly payments to Becky in amounts varying from $130 to $200 per month, which were made up of income and principal. While there was testimony that the trustee was conversant with Becky's financial affairs and gave consideration to such matters during that period, it did not regard its powers to invade principal as limited to bare necessities of Becky after taking into strict account her income from other sources or to require her to exhaust or use her own personal estate for purposes of support. Consequently, no special effort was made to require Becky regularly to report her income and expenses and to account for the expenditure of amounts paid to her by the trustee.

In 1952 Becky married Leonard Boehler. At the time of the marriage Boehler was a man of modest means and because of physical disability had not been employed for some time. His only income for the past several years has been a small social security payment. On the occasion of Becky's remarriage, Alma Finkbiner made inquiry of the trustee as to the payments being made to Becky from the trust. Upon being informed that the trustee had been invading principal in order to make the monthly payments of $200, Mrs. Finkbiner, through her attorney, advised the trustee that further invasion of principal under the circumstances then existing was unwarranted and was in fact contrary to the provisions of the trust. In view of the complaint and in view of the changed circumstances, the trustee made a reappraisal of the entire situation. The matter was also referred to its attorney. Thereafter, the trustee concluded that a monthly payment of $162.50 to Becky from the trust—in part from income and in part from principal—was necessary for her reasonable care and support and payments in such amount have been made since that time. Becky did not object. Mrs. Finkbiner was also advised of the decision by the trustee but took no action before her death in November 1962. For the period between August 1, 1936 and January 29, 1965, the trustee paid to Becky out of the principal of the trust approximately $23,000. Of that amount approximately $13,500 has been paid since the remarriage of Becky. The balance of the principal re-

maining in the trust after making said payments was approximately $12,000.

The action here was commenced in April 1963. In substance, the contentions of plaintiffs below were that the intention of the grantor was that the principal of the trust was to remain intact for the remaindermen except invasion for amounts necessary for Becky's proper care and support; that it was not intended that the principal be used to enhance the value of Becky's personal estate; that the advances made by the trustee were not necessary for Becky's care and support; that because of the remarriage Becky was not entitled to further advances; that the trustee had been careless and negligent in the administration of the trust; and that the payments made from principal by the trustee were simply "advances" in the nature of loans from the trust and had to be restored. The relief sought was a determination of the rights of the parties under the trust agreement, an order restraining the trustee from further invasion of principal, and that the trustee be required to restore to principal the funds paid to Becky from that source. As we understand plaintiffs' brief, this demand has now been modified to embrace only the payments made subsequent to Becky's remarriage.

The contentions of the defendants were that Becky was the primary interest of grantor in creating the trust; that the trustee had absolute discretion to invade the principal in such amount as in its judgment was necessary for Becky's proper care and support and could be held accountable only for failure to exercise its discretion in good faith; that such discretion is not subject to control by the court except for abuse; that in exercising its discretion it need not consider Becky's other financial means, or in the alternative that it need only consider Becky's other income; and that the payments made to Becky from principal were within the trustee's discretion. By their answer and counterclaim the defendants asked that the court determine the rights of the parties in keeping with their contentions and that plaintiffs' claims for relief be denied.

The trial court in disposing of the matter held that the trust instrument was not ambiguous and the intention of grantor could be determined from the four corners of the instrument; that the trustee did not have absolute discretion in the invasion of principal for Becky's care and support; that Becky was not required to exhaust her personal estate in order to receive payment of principal; that the trustee before invading principal must take into consideration the other income of Becky and her husband so that payments of principal will not result in an increase of Becky's personal estate; that the word "advance" for purposes of the trust means "pay"; that Becky's remarriage did not affect her status as the life beneficiary; that the trustee has not been negligent in its administration of the trust, has acted in good faith, and has not abused its discretion; and that defendants were not liable to the remaindermen and neither the trustee nor Becky are required to reimburse principal. The trial court also directed the trustee to investigate and redetermine the extent to which the principal should be invaded, taking care that such payments when added to Becky's other income would sufficiently enable her to maintain her present station in life and yet not increase the corpus of her personal estate.

On appeal the plaintiffs in substance contend that the judgment of the trial court was in error except that portion which determined the trustee was required to consider Becky's other income before invading principal. The defendants in substance contend that the trial court erred in holding certain extrinsic evidence inadmissible because the trust instrument was not ambiguous and in declining to consider other evidence of surrounding circumstances; in holding that the trustee's discretion to invade principal for the purpose stated was not absolute; and in directing the trustee to exercise its discretion in the manner above set forth.

From the foregoing it is quite evident that inquiry into the powers of the trustee is not only essential, but to a large extent will dispose of the questions raised on both appeals.

In approaching the question of interpretation of the clause granting the power of invasion of the principal, we will first state that we would like to agree with the trial court's conclusion that such clause, when considered with other provisions of the trust, was not ambiguous. Unfortunately, we cannot go that far. The great volume of litigation prompted by clauses similar to the one here and the struggle courts have with those clauses in order to arrive at the intention of the grantor demonstrate the ambiguity. Usually, the divergence in results reached can be attributed in a large measure to the circumstances surrounding the creation of the trust. For an informative discussion of the matter see 2 Scott on Trusts, § 164.1, pp. 1156–1160 (2d Ed.). Consequently, we think there is merit in defendants' contention that competent evidence tending to show surrounding circumstances was admissible and was entitled to consideration. That is particularly true of grantor's will executed on the same date as the trust instrument and the codicil thereto executed in the year 1934. In this connection we should mention that the codicil was one item of evidence which the trial court refused to admit in evidence. Such a ruling, it seems to us, overlooks the fact that the trust was not funded at the time the codicil was executed and the grantor had reserved the right to amend or revoke the trust at any time. The codicil was therefore relevant as a part of the overall plan adopted by John Huckfeldt for disposing of his property and such plan does have some significance as an aid to construing the invasion clause. Nevertheless, we do not find that the trial court's rulings on these matters were prejudicial. With one exception, which we shall later mention, we are of the opinion that the trial court properly disposed of the questions before it

and the exception can be corrected here without invading the province of the trial court as the finder of the facts. Furthermore, the trial court, as shown by its memorandum opinion, did give consideration to the surrounding circumstances in arriving at certain of its conclusions.

In meeting the difficult problem of interpreting the invasion clause of the trust in order to arrive at the intention of the grantor, we have been substantially aided by the thoroughness with which counsel for both parties in their briefs have presented and analyzed the authorities in connection therewith. As stated by counsel for the plaintiffs, the cases, for convenience, can be viewed as falling into three general classes, namely, (1) those holding that the trustee must inquire into the assets and resources of the life beneficiary and require that they be exhausted in whole or in part before payments are made from the principal, (2) those holding that the trustee need consider only the other income of the life beneficiary—not his assets, and (3) those holding that the trust was intended to provide for the needs of the beneficiary and was a complete benefaction in itself and that the trustee need not inquire into either the assets or income of the life beneficiary. To the three classes mentioned, despite overlapping, should be added a fourth classification, and it is composed of those cases advanced by counsel for the defendants interpreting a clause containing language similar to the clause here as vesting in the trustee an absolute or unlimited discretion which is not subject to control by the courts except to prevent abuse. Several cases hold that subject to such limitation the trustee is free to consider or not consider a life beneficiary's other financial means.

While a review of the authorities supporting the approach taken by the courts in the four classes of cases enumerated has been informative, an effort on our part to analyze and reconcile the divergent results reached would seem unrewarding. Because of the variance in the language of the

clause being interpreted and the differing surrounding circumstances present in each case, reliance on precedents has its limitations. In re Tuthill's Will, 247 Minn. 122, 76 N.W.2d 499, 502; and Annotation 2 A.L.R.2d 1383, 1431. Seldom is it possible neatly to package an invasion clause into a particular class and say that it is controlled by some categorical general rule. Certainly that is true of this case, particularly as to the language used. Except as to its general tenor, it seems almost unique. Nevertheless, we shall proceed as best we can to interpret the clause, keeping in mind helpful and well-recognized rules of construction.

■■■ As we have heretofore indicated, it is the intention of the grantor that must govern. That is to be ascertained, if possible, from the context of the trust instrument as a whole. Every word is to be given effect if that can be done without defeating the general purpose of the trust. In re Ogburn's Estate, Wyo., 406 P.2d 655, 658. If the intention of the grantor does not readily appear from the instrument, then the language used is to be read in the light of the surrounding circumstances. In re Tuthill's Will, supra; In re Worman's Estate, 231 Iowa 1351, 4 N.W.2d 373, 374; United States Trust Co. of New York v. Jones, 414 Ill. 265, 111 N.E.2d 144, 147–148. A narrow and unreasonable construction that would defeat the purpose intended by the grantor will not be adopted. Once ascertained, the intention must govern, provided that the result reached is not contrary to law. In re Ogburn's Estate, supra.

■■■ It is also a well-recognized rule that the provisions of a husband's will or of a trust created by him conferring benefits upon his wife are to be construed liberally in her behalf. Bradberry v. Anderson, 240 Ala. 681, 200 So. 762, 763; In re Worman's Estate, supra; Arenofsky v. Arenofsky 29 N.J.Super. 209, 102 A.2d 101, 106;

In re Leonard's Estate, 115 Vt. 440, 63 A.2d 179, 181.

■■■ Our first inquiry here can well be directed to the general purpose John Huckfeldt had in mind in creating the trust. As to this the trial court upon consideration of the instrument as a whole and the surrounding circumstances, as disclosed by its memorandum opinion, concluded that the primary purpose was to assure that Becky would be supported in a "proper manner" without having to rely solely "upon the income from this trust and the property he left her." We agree with the conclusion, subject to some refinement. As the trial court observed, the remaindermen were "collateral relatives" and the "primary object of the bounty of the settlor" was his wife, Becky. True, there was evidence from which the trial court might have inferred that because of a special and friendly relationship existing between the grantor and the remaindermen, the grantor intended that the principal of the trust be preserved for the remaindermen to the deprivation of liberality on Becky's behalf, but we cannot say that such was the only inference to be drawn. Perhaps it was this relationship that prompted grantor to select his sister or her issue as residuary beneficiaries rather than to include his other relatives. In any event, there was ample evidence to sustain the view that grantor and Becky had led the "good life," as the trial court put it, and that her welfare was his principal concern. There remains, of course, the question of the extent to which the principal had been devoted to Becky, and we think we can best answer that by next considering the powers conferred upon the trustee to carry out the grantor's primary purpose.

■■■ The invasion clause has heretofore been set forth in full. Without question it discloses an intention to grant broad powers to the trustee. In substance, with emphasis on the dominant words, it authorizes invasion of principal in the "sole discretion" of the trustee from "time to time" in such

amounts as in its "judgment may be necessary for her proper care and support" and in the exercise of such discretion the trustee "shall be liable to no one." No doubt the clause is not as artfully drawn as it might have been to avoid pitfalls that have developed in the law of trusts since 1929. Nevertheless, it seems apparent that grantor firmly believed that the trustee, in the exercise of its experience, judgment and discretion, would so administer the trust as to deal fairly with all the beneficiaries in carrying out the purpose of the trustee. Of course, plaintiffs put that aside as a device prompted by the trustee for its protection, but we think the more reasonable view is that it was here inserted to encourage untrammeled use of the power. Halbach, Problems of Discretion in Discretionary Trusts, 61 Colum.L.Rev. 1425, 1433.

Whether we say it was an absolute discretion seems unimportant. The grant, in any event, gave great freedom of action to the trustee with the qualification that the law places upon it, which is succinctly stated in Bogert, Trusts & Trustees, § 560, p. 119 (2d Ed.), to be:

"* * * that the trustee shall act with some regard to the purposes of the trust, and not make decisions which frustrate the accomplishment of the settlor's intent; and also that he shall employ his discretion deliberately and with some thought and not recklessly or capriciously, and furthermore in a spirit of good faith and honesty."

■ Plaintiffs do not seem particularly to quarrel with that rule but insist that use of the words "necessary support" places the clause in class one above. They rely on cases such as In re Ferrall's Estate, 41 Cal. 2d 166, 258 P.2d 1009; Guaranty Trust Company of New York v. New York City Cancer Committee, 145 Conn. 542, 144 A.2d 535, 537; and In re Martin's Will, 269 N.Y. 305, 199 N.E. 491. For cases to the contrary see Winkel v. Streicher, 365 Mo. 1170, 295 S.W.2d 56, 58–59; In re Clark's Will, 280 N.Y. 155, 19 N.E.2d 1001, 1002; and In re Demitz' Estate, 417 Pa. 316, 208 A.2d 280, 282. Without indicating our approval or disapproval of the rationale followed in any of these cases, we are disposed to regard plaintiffs' contention as advancing a narrow and unreasonable construction. It overlooks the related general standard of "proper care" prescribed by the grantor, the broad discretion conferred upon the trustee, and other pertinent circumstances.

■ Neither do we think it necessary to pass upon the question of whether or not the trustee was compelled to give consideration to Becky's other income. The fact is that the trustee—with the acquiescence of Becky—whether as a matter of interpretation or as an exercise of discretion, has from the outset given consideration to such income and the trial court has found from substantial evidence that in so doing the trustee has not been guilty of negligence; has exercised good faith; and has not abused its discretion. It also stated that other than increment there was no evidence of capital enhancement of Becky's personal estate. We find nothing in the record to indicate that the trustee or Becky at this late date proposes a change of policy in administering the trust, and as a result we think the trial court might well have declined to enter into this unsettled state of the law, even though requested to do so. The real controversy was with the plaintiffs and, as we view it, that controversy was sufficiently settled by the foregoing. Consequently, we hold that the trial court went too far in directing the trustee to reappraise the situation "so that payments of principal will not result in an increase of her [Becky's] personal estate." In essence such a direction fixed the amount of the payments to be made in the future by an illusive standard not imposed upon the trustee by the grantor. That was a matter which the grantor left to the discretion of the trustee in the first instance. In re Grubel's Will, 37 Misc.2d 910, 235 N.Y.S.2d 21, 23.

Also, we find no merit in plaintiffs' contention that the trial court erred in construing the word "advance" to mean "pay." As the trial court remarked, the thought that amounts paid to Becky from principal were "repayable" or in the nature of a "secured loan" would be "repugnant" to the intention of the grantor. The trial court's conclusion is well supported by authority. Hichborn v. Bradbury, 111 Me. 519, 90 A. 325; Martin v. Kimball, 86 N.J. Eq. 10, 96 A. 565, 566, 568, affirmed 86 N.J.Eq. 432, 99 A. 1070; In re Altman's Will, Surr., 6 N.Y.S.2d 972.

The judgment is modified insofar as it undertakes to impose upon the trustee the change in policy for future administration of the trust. In all other respects the judgment is affirmed.

Affirmed as modified.