[Civ. No. 11117.   Third Dist.   Feb. 14, 1966.]

A. J. SYLVA et al., Plaintiffs and Respondents, v. D. J.
KUCK et al., Defendants and Appellants.

Samuel R. Friedman for Defendants and Appellants.

Michael T. Hennessy for Plaintiffs and Respondents.

PIERCE, P. J.—In this suit to quiet title to an easement in plaintiffs Sylva for the use of a road crossing defendants Kuck's lands[1] the Sylvas were successful in the trial court. On appeal the Kucks contend the evidence does not support the judgment establishing the easement. They contend further that even assuming the evidence was sufficient to show the existence of the easement that portion of the judgment which prohibits the maintenance of gates by them was beyond either the issues or supporting evidence and should be stricken from the decree. We hold that the evidence was sufficient to sustain the finding and that portion of the judgment decreeing that the easement exists. We further hold that the question of the right to maintain gates was an issue: but we sustain appellants' contention that there is no finding to sustain, or valid evidence to justify, the court's "conclusion" and judgment that it would constitute an interference with the Sylvas' use of the easement if the Kucks were to install and maintain gates across the road. Since it was an issue not legally determined, we will send the case back for further evidence to be taken and a decision of that question.

---

[1] The Kuck lands were originally owned by Jerome Kuck, since deceased, and presently belong to the widow of Jerome Kuck whose name is now Etta Ensele. She is one of the defendants. The other is D. J. Kuck, son of Jerome and Etta, who operates the ranch. (Other named defendants were found to have no interest in the litigation.) For convenience we refer to the defendants as the "Kucks." Plaintiffs are A. J. Sylva (the father) and Leonard L. Sylva, Edward B. Sylva and Francis Sylva (the sons). We refer to them collectively as the "Sylvas."

The Kuck lands are located in what is commonly known as the Willow Creek area in Siskiyou County. Included within those lands is a triangle of roads, almost a right triangle, with its apex at the north. (See this page for a photocopy of a

Elev. 1007.88

Gravel Road—Plowed

◄— Approx. Location

C    Elev. 966.65    B    Elev. 1000.00

Foothill School    Scale 1"=60'

sketch (Plaintiffs' Exhibit No. 1) which shows these roads.) The Kuck residence with its farm buildings, not shown on the sketch, is described as being near to and east of the apex. The roads forming the hypotenuse and base of the triangle are county roads A and B respectively. The part of road A within the triangle is 760 feet long. The right angle road X opposite road A is the right of way road in question. It is 600

feet long. County roads A and B meet at an angle at a point which the parties have called C. This point is some 540 feet west of the southerly terminus of road X where it joins county road B. Thus, road X is a shortcut for those traveling between points on county road A to the north and points on county road B to the east.

That is the route of travel which it is convenient for the Sylvas to use in traveling from their present resident ranch, about a mile to the north on road A, to their other lands along road B to the east. They use the road for vehicular travel, for hauling hay and grain and for moving cattle. There is another convenience in the use of road X in addition to the saving of distance. To the south and east bound traveler on roads A and B there is a considerable descent on road A before reaching point C, and after leaving that point a considerable rise along road B. (Although there is similarly a swale in the south central portion of road X and a dip in the road as a consequence, a culvert at the trough of the swale and apparently a gravel fill in the road lessens the descent and rise. Except for the culvert and fill road X was unimproved.)

Road X was constructed in 1914 and was apparently the successor of and substitute for a previous road. Its origin and the reason for the building thereof were described in the testimony of plaintiff A. J. Sylva, the father. Sylva related a conversation which he had had in 1914 with John and Jerome ("Rome") Kuck who were then operating the Kuck ranch as a partnership. The Kucks had just bought land lying to the south of what is now road B and in an area south of point C, marked on Plaintiffs' Exhibit No. 1 as "Foothill School." In appellants' brief the whole area is described as containing "vast uninclosed wooded, waste and natural pasture lands." That brief also states (referring to the early days—presumably around 1914): ". . . During such time the two present county roads were not in existence. At that time people in the area followed a meandering course from a point where "B" and "X" now meet, to a point designated "C." When the two present county roads were constructed some years ago, the course of travel was and is over those roads."

According to Sylva, both Kuck brothers told him they wanted to straighten out the roads so they could put fences in at a straight line. Although no indication on a map was given by the witness of the course which the former roads

took, it is obvious the witness was referring to two meandering roads, one which ran in a general easterly-westerly direction (to reach the county roads and highways of the county?) and the other which was a north-south road joining the first, permitting ingress and egress to and from the Kuck home and farm buildings and the area to the north where the Sylvas' present residence and the residences of others are located.

The conversation stated by Sylva was one in which the Kucks were requesting permission to change the course of the roads to create road X and the Sylvas were "allowing" them to do so.[2]

At the time to which this conversation relates, the Sylvas did not live at their residence described above. They lived somewhere to the south of what is now road B. They did, however, use the road. Mr. Sylva testified: "Q. What would be your occasion to go straight on it you had nothing up there? A. Oh, we went to visit the neighbors. I worked there, and I had pasture, a lot of pasture over there."

After county roads A and B were built the school bus taking students to Yreka High School used the shortcut road X to collect and deposit school children, including three plaintiff-Sylva children and D. J. Kuck, all of whom were then of high school age. They were picked up and deposited at a point in front of the Kuck home. To reach that collection point the Sylva children would walk or be driven from their home, using road B and road X.

[2]Following is an excerpt of the testimony: "Q. What was said and what was done? A. Well, they came down over the proposed road. Q. By 'they' you mean who? A. John Kuck and Rome Kuck. Q. They came down where? A. We came down to this, where this road is marked X, right at that. [Sylva then identified the point to which they had gone as the southeast corner of the triangle.] Q. What conversation took place? ... [There was an interruption during objections and colloquy between court and counsel.] A. John made the statement that he wanted to straighten out the road so he could put the fences in a straight line. ... Q. Did he indicate especially with reference to the area surrounding what is now known as Road X and extension of Road B where the road would go in this conversation? A. Yes. Q. What did he say? A. Well, he wanted the road to go that way and back this way. Q. By 'this way' you mean he wanted the road to go northward along the fence line? A. That's right, and east. Q. And east along the fence line off of Exhibit 1? ... Q. Was the road, incidentally, made that way? A. Yes, it was made that way, and that culvert was put in there. I really don't know if the Kucks put the culvert in, because we were allowing to make the change. We were accommodating them by letting them make the change, so that they could use their lands. Q. Has the road been that way since that time? A. Oh, yes."

In 1937 the Sylvas bought their present place to the north and since then they have been using road X regularly and continuously between their land to the north and their place along county road B to the east (i.e., until their use was interrupted by the altercation which touched off this law suit).

The road also has been used by other residents living along county road A above the Kuck place. Of those who testified, however, none except the Sylvas claimed an easement.

The Kucks themselves have used road X over the years not only as a means of ingress and egress to county road B but also as a more convenient way of reaching their lands in the Foothill School area.

Other than the conversation described at length above, there has never been any discussion between the Kucks and Sylvas concerning any claim of easement to use the road; neither was there any interruption of said use and, of course, the fact of such use was well known. The Sylvas and Kucks would exchange greetings and the Sylvas would sometimes stop to visit.

Shortly before this litigation began a dispute arose between the Kucks and Sylvas regarding the use by the latter of certain range lands. With the nature of that dispute we are not concerned. Coinciding with it, D. J. Kuck, manager of the Kuck ranch, proposed to place gates on either end of road X and to tear up the road. Fences had theretofore been built along the easterly side of county road A, along the northerly side of county road B, and north and south parallel to road X but some distance to the east thereof (see sketch). These gates would thus have closed the triangle. According the Kuck's testimony his purpose was to make the triangle an area in which he could confine his registered bulls for showing to the public. The corral thus created, we are told, would be approximately 5 acres in size. When Kuck proposed to construct the gates, the Sylvas objected, claiming they had an easement. The Kucks then plowed up road X and this law suit followed.

During the trial the judge viewed the premises.

Re: *The Contention that the Evidence does not Support the Finding of a Prescriptive Easement.*

Appellants argue that the use of road X by the Sylvas was a mere act of neighborly accommodation on the part of the Kucks. Throughout their briefs they stress the fact that this

road was located upon open and unenclosed lands from which, they urge, a "presumption" arises that use was permissive only and that no prescriptive right could grow out of such use no matter how long the use was continued nor how frequent. We agree the evidence would have justified a finding by the trier of fact that the use was permissive. On the other hand, it did not require such a finding. The trial court was justified in holding that the easement *did* exist.

To acquire an easement by prescription one must prove actual, open, notorious, continuous and peaceable use for the statutory period. (*Cleary* v. *Trimble*, 229 Cal.App.2d 1 [39 Cal.Rptr. 776]; *Jones* v. *Young*, 147 Cal.App.2d 496, 498 [305 P.2d 286].) The use, of course, must be adverse and under a claim of right and not a mere neighborly accommodation. (See *O'Banion* v. *Borba*, 32 Cal.2d 145, 150 [195 P.2d 10].)

A quotation from the last mentioned case is apt. It is stated (per Justice Carter) on pages 148-150: "There has been considerable confusion in the cases involving the acquisition of easements by prescription, concerning the presence or absence of a presumption that the use is under a claim of right adverse to the owner of the servient tenement, and of which he has constructive notice, upon the showing of an open, continuous, notorious and peaceable use for the prescriptive period. Some cases hold that from that showing a presumption arises that the use is under a claim of right adverse to the owner. [Citations.] It has been intimated that the presumption does not arise when the easement is over unenclosed and unimproved land. [Citation.] Other cases hold that there must be specific direct evidence of an adverse claim of right, and in its absence a presumption of permissive use is indulged. [Citations.] The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner. There seems to be no apparent reason for discussing the matter from the standpoint of presumptions. For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements. *In the appellate court the issue is merely whether there is sufficient evidence to support the judgment of the trial court. This view has been implicitly followed.*

[Citations.]'' (Italics supplied.) (See also *Cleary* v. *Trimble*, 229 Cal.App.2d, *supra*, at pp. 8-9.)

■ Applying that pronouncement to the case at bench, we cannot say that there was not sufficient evidence to support the judgment of the trial court.

Road X, a roadway which had had an existence for nearly 50 years when this controversy arose, had been built to take the place of a former meandering road or series of ways which seem to have been used for a considerable period generally by people (both property owners and members of the public) traveling to the north and south, east and west, in that area. The fact that the predecessors of the present Kucks sought and obtained the permission of Sylva senior to construct road X and thus cause the abandonment of the old roads infers a recognition that Sylva had a right to pass over the road as a matter of right. At least a trier of fact could reasonably draw such inference. True, the original use had been to visit acquaintances and to reach pasture lands operated by the Sylvas lying to the north, and this use, no doubt, was greatly increased when the Sylvas acquired their place to the north and the road became the main route, or cut-off, between their home place and their lands along road B; but the increased use was for the prescriptive period (1937 to 1964), and continuous use from 1914 to the present was under circumstances justifying the trial court in finding a right thereto, not mere neighborly accommodation.

But what is the extent of the easement supported by substantial evidence?

Re: *The Contention that the Ruling Prohibiting Gates was Unsupported by the Evidence.*

■ After the court had reached its decision findings were prepared. In the originally proposed findings it was stated that the Sylvas had a prescriptive easement ''for vehicular travel, moving cattle and moving machinery.'' Nothing is stated as to the extent of such right of use for such purposes. It is said in the amended findings that ''such easement and roadway are of such width as has customarily been necessary for'' the purposes declared. The court also found the Kucks ''did impair and block such easement and roadway, and thereby [made] them impassable to the plaintiffs according to their customary use.'' The originally proposed conclusions directed Kuck to restore the road and prohibited him from interfering with the Sylvas' use. The originally proposed findings had set forth nothing about the installation or

maintenance of gates. Before the findings had been signed defendants filed proposed amendments and exceptions. Among other things, they excepted to the conclusion prohibiting ''interference'' by asserting ''the evidence supports defendants' right to maintain a gate leading in and out of the real property over which the claimed easement crosses, and which right to maintain the same is supported by law.'' The court made amendments to its findings. The findings of fact as signed contain nothing on the issue of the right to maintain gates. In the court's conclusions of law, however, it is stated that a prohibitory injunction would include a prohibition against ''in any manner placing gates or other type of obstruction.'' The judgment contains the same provision.

There is not a word of evidence in the record relating to the width of the roadway or its characteristics, excepting testimony that it was not ''maintained'' or improved (other than by the culvert and gravel fill). Neither was there testimony regarding the size of equipment operated thereover nor of the number of cattle ''moved.'' Nor was there any proof as to whether or not the installation and maintenance of gates by the Kucks would interfere with the Sylvas' use of the road. All of these matters were within the issues framed since general allegations in the complaint of title to the easement and the denial of that right in the answer framed those issues sufficiently. (*Roth* v. *Cottrell*, 113 Cal.App.2d 621, 623 [246 P.2d 958].)

The objection of the Kucks to the provision of the judgment prohibiting them from maintaining gates appears to be a substantial one. Without gates or the construction by the Kucks of a new fence 600 feet long west of the road, they will be unable to confine animals within the triangle, an area of 5 acres. Since use of the land as a corral appears to be its only practicable one, deprivation of that right would seem to give to the Sylvas (absent fencing) an easement not only along the road but effectually, when running cattle, over the entire area.

The rule is clearly established that an easement acquired by prescription cannot extend beyond the use by which it is gained. (*Gaut* v. *Farmer*, 215 Cal.App.2d 278, 282 [30 Cal.Rptr. 94]; *Costa* v. *Fawcett*, 202 Cal.App.2d 695, 702 [21 Cal.Rptr. 143]; Civ. Code, sec. 806.)

The precise question here involved—the right to maintain gates—was involved in the case previously cited, (*O'Banion* v. *Borba, supra*, 32 Cal.2d at pp. 153-155). There it was

stated as dictum by Justice Carter that although the rule had sometimes been stated that if no gates had been maintained during the prescriptive period, none could be installed thereafter, other courts had held that the servient owner is entitled to use the property in any way that does not unduly interfere with the use by the dominant owner and hence may maintain noninterfering gates. Justice Carter states the latter to be the proper rule. In *O'Banion* the judgment had not contained a prohibition against maintenance of gates, and the question had not even arisen until the appeal was argued in the Supreme Court. It was therefore held not to be before the court.

Here the question *was* raised in the trial court. The question was one of fact. Although the trial court did purport to answer it in its judgment, there was, as stated above, no evidence upon which that judgment could be based. It was, of course, the burden of plaintiffs to prove that the maintenance of gates would interfere with their easement.

■ On oral argument plaintiffs' counsel refers to the judge's visit to the premises as supplying proof on this issue necessary to support the judgment. We do not so regard it. ■ It is, of course, true that a view of the scene by the trier of fact is, singly or in connection with other proof, considered as independent evidence on which a finding may be made and sustained. (*Key* v. *McCabe*, 54 Cal.2d 736, 739 [8 Cal.Rptr. 425, 356 P.2d 169]; see also Witkin, Cal. Evidence (1958) § 320, p. 359, and cases there cited.) But this is only true to the extent that a view of the premises has probative value as to a particular issue. A view of the premises referred to by Dean Wigmore as "autoptic proference" may, or may not, be admissible (or probative of an issue) depending upon whether it is relevant. (4 Wigmore, Evidence, § 1154, pp. 243-246.) ■ Where the significance of the view of a scene would not be apprehensible by a judge or jury without an accompanying explanation, it is inadmissible unless that explanation is furnished. (See *op. cit.* § 1160.)

■ Relevancy here could only exist after a proper foundation laid. Without showing the type of gates to be installed, the frequency of use, the number of cattle involved, the quantity of interference which would ensue, etc., no determination of the issue could possibly be made fairly. (Even with such evidence a supplementing view of the premises might or might not have probative value depending upon the experience and training of the viewer.) Hence the view here was

irrelevant to the issue respecting which plaintiffs now seek to apply it. (*Accord Balthrop* v. *Atchison, T. & S. F. Ry. Co.*, 167 Cal.App.2d 437, 444 [334 P.2d 1041].) The issue of the right to maintain gates was therefore not determined by relevant evidence.

This case must be reversed in part. It is unnecessary to retry the issue of the existence of the easement. (*Brewer* v. *Second Baptist Church*, 32 Cal.2d 791, 801 [197 P.2d 713].)

The judgment is reversed insofar as it decrees that defendants be prohibited from maintaining gates. That issue shall be retried to determine whether and to what extent, if any, defendants should be permitted to install and maintain gates at the termini of the right of way road X with a co-existing obligation on the part of plaintiffs to close such gates after passage through them. In all other respects the judgment is affirmed. Each side shall bear its own costs on appeal.

Regan, J., and Good, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.