Jennette A. DAWSON et al., Appellants
(Plaintiffs below),

v.

Harold MEIKE, a/k/a Harold L. Meike, and
Emil Meike, a/k/a Emil E. Meike, Appellees (Defendants below).

Harold MEIKE, Appellant
(Defendant below),
Emil Meike (Defendant below),

v.

Jennette DAWSON et al., Appellees
(Plaintiffs below).

Nos. 4155, 4156.

Supreme Court of Wyoming.
April 6, 1973.

Richard J. Leedy, Salt Lake City, Utah, LaVoy O. Taylor, Alpine, for appellant.

Before PARKER, C. J., and McEWAN, GUTHRIE, and McINTYRE, JJ.

Charles R. Spratt, Buffalo, for appellants in Case 4155 and appellees in Case 4156.

William J. Kirven and Robert A. Hill, Buffalo, for appellees in Case 4155 and appellant in Case 4156.

Before PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiffs brought an action against defendants, seeking a share of mineral lease rentals on approximately 7,660 acres of land previously deeded to defendants with certain reservations. The land, formerly belonging to Jennette and Earl A. Dawson, was in 1950 transferred by agreement and warranty deed to defendants.[1] After both plaintiffs and defendants had completed their pleadings and had moved for summary judgment, the matter was set for hearing, whereupon the plaintiffs' motion was denied but defendant-Harold Meike's was granted [2] the court finding, inter alia:

"* * * plaintiffs' complaint is founded on the premise that plaintiffs are entitled to a share of the rental received by the defendants from a uranium lease entered into by defendants, and plaintiffs claim that uranium is kindred to oil and gas. The Court finds that uranium is not a mineral which is kindred to oil and gas but does find incidentally that coal is kindred to oil and gas. The Court further finds that plaintiffs are now barred by the statute of limitations from making any claim of ownership to uranium since it is not kindred to oil and gas and their rights to claim any other and different minerals are barred under Sections 1–17 and 34–36, W.S.1957."

From that judgment both plaintiffs and defendant-Harold Meike appealed, plaintiffs contending error as a matter of law that they were held not to be entitled to receive one-half of the bonus and rentals from a mineral lease. Defendant-Harold Meike, in addition to countering this argument, insists that the trial court improperly enlarged the issue before it by adding the extraneous conclusion of law that coal is kindred to oil and gas.

The instruments by which defendants acquired title to the land in issue here were an agreement for deed dated February 16, 1950, which contained the following reference to mineral acreage:

"That it is understood that an examination of the records will be made and the first parties and the second parties will divide the oil rights in and under said lands in equal shares. That is to say, that the first parties will retain all of the oil rights on one-half (½) of the lands and the second parties will receive all of the oil rights on the other one-half (½). It is anticipated that as soon as the mineral acreage is determined the parties will agree upon a physical division of the lands which is impossible at this time for the reason that they do not now know just which lands they own the minerals under and upon which lands the mineral rights have been retained by the government."

and a warranty deed of the same date, filed of record September 30, 1950, which expressed the reservation to plaintiffs as follows:

"The grantors reserve unto themselves, their heirs, executors, administrators and

1. Jennette Dawson, surviving spouse of Earl A. Dawson, allegedly conveyed portions of reserved mineral interests to the other plaintiffs herein.

2. During the course of the proceedings, defendant-Emil Meike died.

assigns an undivided one half of all of the oil, gas and kindred minerals in and under said lands, together with the right to receive one half of all moneys received from mineral leases, whether as rental, bonus or payments for deferred drilling. But it is expressly understood and agreed that the grantees herein, their heirs, executors and successors in title to said lands shall have the exclusive right to lease said lands for oil and gas upon such terms and to any individual or company of their selection, accounting to the grantors or their heirs or assigns for their share of all proceeds received from or on account of such leases."

The moneys in which plaintiffs in this action sought to share emanated from a ten-year lease of defendants to Karl W. Bergner on the land in issue, granting "the exclusive right and privilege to explore for, develop, mine (by open pit, underground, strip mining, solution mining or any other method) extract, mill, store, remove and market therefrom all minerals, metals, ores and materials of whatsoever nature or sort (hereinafter called 'Leased Substances') with the exception of coal, oil shale, bentonite, oil and gas, sand and gravel, or rock crushed for aggregate, and of using so much of the surface of said land as may be necessary, useful or convenient for the full enjoyment of all rights herein granted." A rider on the lease referred specifically to uranium.

Plaintiffs in their brief here say that they did not in the trial court seek an interpretation of the words "kindred minerals" and in oral argument here specifically disclaimed any reliance on those words. By reason of this disclaimer and renunciation, the present opinion omits any discussion of the "kindred" argument mentioned in the trial court's findings except to say that if any such aspect had been considered

by the trial court to be relevant in the determination of the ligitation the summary judgment would have been improper since there was insufficient evidence to show as a matter of law "that coal is kindred to oil and gas," which finding, being outside the issues of the litigation, was improper and hence is stricken.

We address ourselves then to what we understand that plaintiffs present as the sole argument for reversal,[3] i. e., the reservation provisions of the warranty deed control the rights of the parties. In developing that argument they refer to their rights in the property insofar as concerns their entitlement to participate in bonus payments, delay rentals, deferred drillings, and similar payments, as a "modified" royalty interest. The various cases cited on this aspect are based on facts entirely disparate from the matter at bar and bear insufficiently on the central argument to merit discussion.

In passing, it may be apropos to note that we find no occasion to consider the statute of limitation, § 1–17, W.S.1957, mentioned by the trial court, since in our view any rights of plaintiffs must be derived from the reservation in the deed by proper interpretation. As said in Cinderella Theatre Company v. United Detroit Theatres Corporation, 367 Mich. 424, 116 N.W.2d 825, 827, a statute such as § 34–36, W.S.1957, providing that no covenant shall be implied in any conveyance of real estate, should not be so literally applied as to defeat the clear intention of the parties as gathered from the context of the instrument.[4] In that regard, we observed in Barlow v. Makeeff, 74 Wyo. 171, 284 P.2d 1093, 1097, that in construing and determining the effect of a written contract the intention of the parties and the meaning are gathered primarily from the contents of the writing itself if it is not ambiguous.

---

3. The only facet of the judgment challenged by defendant-Harold Meike was the "kindred" relation of coal. Plaintiffs concede that all previous leases were for oil and gas and that defendants properly account-ed for the one-half interest in bonuses and other payments.

4. Plaintiffs do not contend that their rights related directly to the agreement for deed.

We agree with plaintiffs in their reliance on Iskian v. Consolidated Gas Utilities Corp., 207 Okl. 615, 251 P.2d 1073, and Cridland v. Franklin, 191 Okl. 650, 132 P.2d 323, that in the interpretation of any covenant made by warranty deed the question is what is the intention of the parties and especially of the grantors. Further, we find no fault with their insistence on the authority of Houghton v. Thompson, 57 Wyo. 196, 115 P.2d 654, that to interpret a contract for the conveyance of an interest in oil and gas the court should consider not only the terms of the writing but also the surrounding circumstances, attendant facts showing the relations of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. However, plaintiffs seem to overlook the fact that the record here is devoid of any claim that the attendant facts, over and above the words actually used, had any bearing upon the intention of the parties. In last analysis, we think the terms of the deed in issue here were sufficiently clear to convey the meaning of the grantors without reference to attendant facts and circumstances.

We focus then on the wording of the agreement and deed. No argument is advanced that the agreement specifically referred to any substances other than oil. Plaintiffs' reasoning as to the deed is that the grantors' reservation related to three separate interests, namely, (1) an undivided one-half of all of the oil, gas, and kindred minerals in and under said lands; (2) the right to receive one-half of all moneys received from mineral leases whether as rental, bonus, or for deferred drilling; and (3) grantees and their successors should have the exclusive right to lease the lands for oil and gas. We do not agree. The deed must be interpreted as a whole, with provisions thereof read in pari materia, and cannot be separated for the purposes of interpretation. It is well recognized that in the construction of deeds, they must be considered as a whole and the intent of the parties gathered from the plain and unambiguous language contained therein. Rogers v. Morgan, 250 Miss. 9, 164 So. 2d 480, 484; Magnusson v. Colorado Oil and Gas Corporation, 183 Kan. 568, 331 P.2d 577, 581. We find no validity in the plaintiffs' contention (actual in oral argument and implicit in the brief) that the words "together with the right to receive one half of all moneys received from mineral leases, whether as rental, bonus or payments for deferred drilling" meant *all* minerals and was not restricted to "oil, gas and kindred minerals" mentioned in the immediately preceding phrase.

Modified and affirmed.