Phil YECKEL and Jane C. Yeckel, Appellants (Defendants and Third-Party Plaintiffs Below),

v.

Jay Robert CONNELL et al., Appellees (Plaintiffs Below),

v.

Granville O. BARCLAY and Florence Carr Barclay, Appellees (Third-Party Defendants and Fourth-Party Plaintiffs Below),

v.

Harold C. COSTELLO and Hope O. Costello, (Fourth-Party Defendants Below).

No. 4141.

Supreme Court of Wyoming.

April 19, 1973.

Rehearing Denied May 24, 1973.

Henry A. Burgess, Burgess, Kennedy & Davis, Sheridan, for appellants.

Lawrence A. Yonkee, Redle, Yonkee & Arney, Sheridan, for appellees, Connell, Lewton, Spencer and King.

Robert E. Holstedt, Sheridan, for appellees, the Barclays.

William J. Kirven, Buffalo, for the Costellos.

Before PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

McINTYRE, Justice.

Dr. Jay Robert Connell and his wife, Irene S. Connell, together with Charles E. Lewton, D. Keith Spencer and Floyd R. King, brought an action against Phil Yeckel and Jane Yeckel, husband and wife, to establish the right of plaintiffs to a right-of-way easement across lands of the defendants.

The district court held the plaintiffs had an easement through the land of defendants and defendants have appealed. The question we must first decide is whether plaintiffs sustained their burden of proving they had a prescriptive right to an easement over defendants' land. We find there was not adequate proof of an open, continuous, uninterrupted and adverse use under color of title or claim of right for any ten-year period by plaintiffs or their predecessors in title. Hence, the case will have to be reversed and judgment entered for the defendants.

Evidence in the case reveals the land of plaintiffs consists of about 1100 acres lying against the Big Horn Mountains and joining land owned by the Yeckels. The Yeckel land is known as the Hidden Valley Ranch. We will refer to it as "Hidden Valley." The land owned by plaintiffs was acquired in early days by Charles L. Brinsmade from several homesteaders. We will refer to it as the "Brinsmade place."

Dr. Connell purchased the Brinsmade place in June, 1963. On April 10, 1970 he and his wife executed an agreement for warranty deed with respect to 480 acres, with Lewton, Spencer and King as purchasers. The evidence discloses the purchasers intended to use the 480 acres for a subdivision development. In the agreement for warranty deed, the Connells agreed to prove that a right of ingress and egress over the unimproved road serving the 480 acres had been acquired by sellers and their predecessors in interest, over a period of more than ten years.

In the summer of 1970, the new purchasers engaged in surveying. It appears from the evidence that their intention was to make the road into an all-weather road, which it never had been. According to their plans, the road was to be widened and graveled, with grading, culverts and structures, apparently for use of their future assignees and grantees.

A motor patrol was brought in, in September, 1970, and the new purchasers started grading the road. This activity led to their eviction by the Yeckels and their employees and a tight locking of a gate across the road. The parties agreed they would see each other in court and the filing of this action resulted.

According to undisputed evidence, the road in question has been in existence for a long time, at least 70 years. The defendants do not deny this. In fact, they use the road in their ranching operations. It goes to and past their ranch buildings, then to and past their property line and onto the Brinsmade place. The irrigation head gate for the Hidden Valley ranch is on the Brinsmade place, which means the road is used by the Yeckels not only in ranch operations on Hidden Valley property but also in going to and from their head gate.

In his opening statement, counsel for the plaintiffs states the road has been there many, many years and is a road that has been used for "a wide variety of purposes." Plaintiffs used so many witnesses and spent so much trial time proving that the road

has been used on various occasions by different individuals going to places other than the Brinsmade place that we are led to believe the plaintiffs thought they were thereby proving their case. They were not. It would appear, however, that such evidence was confusing and misleading to the trial court because its findings and decision appear to be based on such evidence.

Plaintiffs' complaint is predicated on the claim of a private right of way. There was no claim of a public road in pleadings, pretrial conference, or trial. Indeed, the trial court found the easement decreed by it was a private right of way and not a public road. No evidence is reflected in the record of a sustained or continuous use of the road by the public generally. All ranches in the area, with the exception of the Brinsmade place, have more favorable access by other routes; and their owners normally come and go by routes other than the road we are concerned with.

*Was Use Adverse With Claim of Right?*

 We prefer to deal first of all with the question of whether the use of the road by the Connells was adverse and under a claim of right. There can be no doubt that a party claiming a right of way by prescription has the burden of proving his use was adverse, under color of title or claim of right, and such as to put the owner of the servient estate on notice that an adverse right was being claimed.[1] If the use is permissive, no easement can be acquired.[2] No claim is made that Connells or any of their predecessors in interest had color of title. Therefore, we need to consider only whether they had a claim of right and whether their actions were such

as to put the owners of Hidden Valley on notice of such claim of right.

The Connells have not lived on the Brinsmade place since they bought it in 1963. Their claim is that they used the place for grazing purposes; that they would drive cattle up to the place in the spring of the year and bring them down in the fall. Dr. Connell testified they usually took the cattle through Victor Garber's ranch and not across Hidden Valley "so as not to traverse farm ground with cattle."

Asked how many times he used the road across Hidden Valley for trailing or driving livestock, Dr. Connell testified "On two or three occasions; one well-remembered occasion." When asked if, on those occasions, or any one of them, he sought permission to trail livestock over the Hidden Valley road, Connell answered:

"Yes, I did."

Concerning the one well-remembered occasion (the fall of 1969), Connell testified Yeckel and his foreman helped bring the cattle out over "their" road. It was explained that Connell had asked Yeckel if it would be all right if Hidden Valley corrals were used when the cattle were brought down. Not only did Yeckel say it would be fine, but he and his foreman assisted.

Connell was asked if he asked permission on any other occasion for trailing livestock. His answer was not an unequivocal no. Instead, it was:

"Not to my recollection."

Aside from the 1969 occasion when Yeckel and his foreman assisted in bringing down the Connell cattle, Connell testified they were going to help him one other year. For some reason, however, Connell said they had to go out another way. This

1. Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 28; Mackey v. Weakley, Mo.App., 439 S.W.2d 219, 225; Board of County Commissioners v. Lloyd, Okl., 322 P.2d 406, 407; Duty v. Vinson, 228 Ark. 617, 309 S.W.2d 318, 322; Cook v. Bolin, Mo.App., 296 S.W.2d 181, 187; 28 C.J.S. Easements § 10, p. 645.

2. Nicholas v. Salisbury Hardware and Furniture Co., 248 N.C. 462, 103 S.E. 2d 837, 844; Mississippi State Highway Commission v. Morgan, 248 Miss. 631, 160 So.2d 77, 79; Dailey v. Alarid, Tex. Civ.App., 486 S.W.2d 620, 623; Patterson v. Harris, 239 Miss. 774, 125 So.2d 545, 550; Cook v. Bolin, Mo.App., 296 S.W.2d 181, 188; 28 C.J.S. Easements § 18(d), pp. 666–668.

kind of help and cooperation on the part of Yeckel and his employees signify more of a permissive use of the Hidden Valley road than an adverse use under a claim of right.

Granville O. Barclay, a former owner of Hidden Valley, testified the Connells contacted either him or his foreman one year about crossing his property. According to his testimony, he could not let them go through because he had grain in. Asked about other years, the witness said he distinctly remembered Mrs. Connell calling one year and saying she was coming through. He believed she spoke of pushing cattle.

This former owner testified affirmatively that there was nothing in the use of the Hidden Valley road during his ownership which indicated to him that Connells claimed the right to use the road adversely to his possession.

It is not disputed in the evidence that Connells and their employees crossed the Hidden Valley place for vehicle or horseback travel, without seeking permission, during the periods when they were using the Brinsmade place for grazing cattle, at least up to the time of Yeckel's ownership. We have already indicated all such use was cut off in September, 1970. The situation for a year and a half before that is not entirely clear, as we will indicate when we discuss the continuity of use.

At this time we are still considering whether the use of the Hidden Valley road by owners of the Brinsmade place was under a claim of right (as distinguished from permissive) with notice to the Hidden Valley owners that there was an adverse claim of right. There is no positive or affirmative evidence indicating the superior rights of Hidden Valley owners were ever denied or challenged, or that any of the Brinsmade owners ever asserted or claimed to a Hidden Valley owner that a Brinsmade owner had a right to use the Hidden Valley road, which was adverse and superior to the Hidden Valley ownership.

■ This leaves the plaintiffs standing on that line of cases which hold that a presumption of adverseness arises where one person uses a way across another person's land for the prescriptive period. We find it unnecessary to say whether such a presumption applies in the ordinary case because, in this particular case, the testimony of Dr. Connell is sufficient to show affirmatively that he and his people came and went permissively and not under an adverse claim of right.

We have already spoken of Connell's testimony that he usually took his cattle through Garber's ranch and not across Hidden Valley "so as not to traverse farm ground with cattle." We fail to see how such testimony can denote anything except the recognition of a superior right on the part of Hidden Valley to use the roadway as the owner sees fit, and to exclude when necessary or not convenient others wishing to cross.

Moreover, owners and foremen of Hidden Valley testified to times when Connell was not permitted to travel the roadway in question, either because of grain being planted or baled hay being in the roadway. More than once Connell was asked about such a situation and if he would then go through. His answer once was, "No; we always asked permission, to avoid any problems with the neighbors." At another time the testimony of Dr. Connell went like this:

"Q Do you remember in the spring of 1963, when Mr. Barclay had planted oats in that field? A As to when he had oats in the field, I couldn't tell you. I do remember seeing a grain crop at some time. If he was '63, and you say so, that's all right.

"Q Did you know that in 1963, that you or your employees were denied permission to trail cattle across there because of the oat crop? A If they had grain crop in or had hay ready to cut, or were irrigating, we always asked, as a courtesy, whether or not it was convenient for us to take cattle through.

"Q And if they had oats in there at that time, you would not have taken your cattle through there? A Of course not.

"Q And do you remember at another year, when Mr. Barclay was the owner of the place, that they had a hay crop that had been cut and baled, was lying on that pasture area, there, and that you were denied the use of it to bring your cattle through because they were afraid your cattle would eat some of the baled hay? A Well, I am sure if they had a crop down, they wouldn't want us to go through with cattle.

"Q You don't remember of those instances? A I do remember seeing grain in that field; yes; and hay bales, but whether or not it coincided with when we wanted to come in or go out, I couldn't tell you."

Whether or not times when Connell saw grain in the field and hay bales coincided with times when he wanted to come in or go out is unimportant. The point is that, even on the witness stand, Connell was recognizing that the owners of Hidden Valley had the superior right; that they could, when they chose, plant crops and entirely obstruct or cut off the road and right of way claimed by him. Not only that, but he was putting his going and coming over the Hidden Valley road on the basis of neighborly courtesies—the same as if he were crossing Garber or another neighbor.

To use the words of Connell at another point in his testimony:

"Well, it's a common courtesy *when you are imposing on someone else's operation.* If they had cattle in that pasture, if they had bulls in there, or if they were in the middle of a crop, or in the middle of irrigation, you simply wouldn't bust through; you would always ask." [Emphasis supplied]

Of course, it goes without saying that if Connell owned the right of way he is claiming and if his use thereof was exclusive, adverse, and under a claim of right, he would not be imposing upon someone else's operation. The someone else would be imposing upon him and he would be expected to protest and assert his right in whatever manner might be necessary.

In Kammerzell v. Anderson, 69 Wyo. 252, 240 P.2d 893, 896, this court dealt with the question of whether the use of a common driveway constructed between lots belonging to plaintiffs on one hand and defendants on the other was under a claim of right, ripening into an easement by prescription, or whether the driveway was used as a mere neighborly accommodation. While recognizing that such a question is ordinarily for the trier, the supreme court said it was of the opinion that use of the driveway was one of neighborly accommodation.[3] To hold otherwise, the court indicated, would be to adjudge that common neighborliness may only be indulged under penalty of encumbering one's property. The use was found not to be adverse.

In the case now before us, we consider the evidence of such a nature that it allows for no inference or conclusion except that Connells used the Hidden Valley road as a result of neighborly accommodation, making the use permissive and not adverse under a claim of right.

The case of Benson v. Fekete, Mo., 424 S.W.2d 729, 738, gives recognition to the principle that use to be adverse must not be made in subordination to the owner. This because the term "adverse," by definition, means the one making the use shall not recognize in those against whom it is claimed an authority either to prevent or to permit its continuance, since it is the non-recognition of such authority at the

---

3. For other cases dealing with the matter of neighborly accommodations, see Patterson v. Harris, 239 Miss. 774, 125 So. 2d 545, 550; Sylva v. Kuck, 240 Cal. App.2d 127, 49 Cal.Rptr. 512, 517; Woods v. Hart, 254 Or. 434, 458 P.2d 945, 946–947; Weaver v. Pitts, 191 N.C. 747, 133 S.E. 2, 3.

time of use which determines whether it is adverse.

■ Also, in Kougl v. Curry, 73 S.D. 427, 44 N.W.2d 114, 118, the principle was followed that, where a person using an easement has acknowledged a superior right in the other party, such admission is fatal to his claim, even though the admission was made by mistake. Restatement, (1944) Property, Div. V, Servitudes, § 459, Comment Sub. (1)b, was cited by the court for a holding that, if a break occurs, as where there is submission to the possessor, there occurs a break in the continuity of the adverse use even though there is no cessation of use.

Connell clearly recognized in the owners of Hidden Valley the right to plant crops and obstruct and prevent Connell's use of the road. Thus, his use was recognized to be in subordination to the operations and wishes of Hidden Valley owners.

We have indicated previously that the road here involved has been in existence for many, many years. Also, that the owners of Hidden Valley have used and do use the road in connection with farming, ranching, irrigation, and for going to and coming from their own ranch buildings. There is no dispute of this. Thus, the road was in existence before either defendants or plaintiffs acquired their respective parcels of land.

In Woods v. Hart, 254 Or. 434, 458 P.2d 945, 946, it was held, where one uses an existing way over another's land and nothing more is shown—which is the situation we are confronted with—it is more reasonable to assume the use was pursuant to a friendly arrangement between neighbors rather than to assume the user was making an adverse claim.

Concerning the claim that a presumption of adverseness arises where a person uses a way across another's land for the prescriptive period, the opinion in *Woods* holds, the fact that claimant's use is of an existing way and the use does not interfere with the owner's use is enough to rebut the presumption of adverseness. The court did say, if plaintiff himself had constructed the road without asking for the servient owner's permission, the act of building the road would give rise to a strong inference of an adverse use. Incidentally, this was the situation in Haines v. Galles, 76 Wyo. 411, 303 P.2d 1004, where the plaintiff claimed to have established the right of way, and the undisputed evidence showed he had done much work on the road and had built three cattle guards where fences crossed the road, all without the consent of the owner.

In the instant case, Connell has made it clear he never did anything to construct or improve the road here involved. His testimony in that regard was as follows:

"Q Well, you never graded the road through there did you? A Had no occasion to.

"Q You never did any work on the road, did you, through the Hidden Valley? A Not necessary.

"Q All you ever did was use the existing road as you found it? A That's correct."

The annotation in 170 A.L.R. 776, 825, lists an impressive number of cases which generally support the following proposition:

"Where the way in question is shown to have been opened or maintained by the owner of the soil for his own benefit, and the claimant's use of it appears to have been merely in common with him, no presumption arises that the latter's use of it was adverse or under a claim of right. In the absence of additional circumstances pertaining to the origin or nature of the claimant's use, and expressing a purpose to impose a separate servitude upon the land, the use is presumed to be permissive only."

The case of Dailey v. Alarid, Tex.Civ. App., 486 S.W.2d 620, 623, holds that mere use will not create an easement; and a use

is permissive and not adverse "as a matter of law," if the way is also used by the owner of the land along with the claimant of the prescription.

### Continuity

■ It is of course settled law that one cannot acquire an easement over lands of another without continuous and uninterrupted adverse use, under claim of right, for the prescriptive period,[4] which in Wyoming is ten years. In view of our position that plaintiffs have failed to show adverse use under claim of right, we need not spend much time on the matter of continuity. However, we do find plaintiffs' evidence also deficient with respect to continuity and we will try in rather a cursory manner to say why.

The first owner on the Brinsmade place who is shown in the evidence to have occupied that place was Brinsmade himself. He is described by the witnesses as a dude from the East who stayed at a guest ranch some distance from the Brinsmade place. After he acquired his place, according to witnesses, he stayed a few short summers on that place. There simply is no evidence or claim that he initiated or acquired a prescriptive right in the road in question and we will not discuss any use he may have made of the road.

Brinsmade died in 1942. Except for testimony of Watts Smyth who said he leased the grass in 1942, the next occupancy of the Brinsmade place shown in the evidence is that of C. R. Weaver. He had a one-year lease and ran a summer camp for girls in 1946. He kept hunters in the fall of that year. According to his deposition, he had trouble about the gate being locked and went to talk with the owner. He was told he was using the road in a way not acceptable and that he could not go on with the same type of business and get along with his neighbor. There is no evi-

dence indicating Weaver protested or challenged the owner's decision or that he claimed a right to use the road regardless.

Next, as far as the evidence shows, Floyd Coates purchased the Brinsmade place in June of 1948. He moved on and occupied it shortly thereafter. A witness for plaintiffs testified he hunted on the place in 1954 and Coates was then living in Big Horn. This corresponds to the testimony of Coates that he lived on the place about six years. Garber testified he lived there about four years. The exact length of time is not important because under no circumstances can ten years of adverse use of the Hidden Valley road be claimed in connection with the occupancy of Coates.

There is no evidence that anybody occupied the Brinsmade place and used the Hidden Valley road between 1954 and the Spring of 1959. Connell had a two-year lease beginning in the Spring of 1959; and he claims to have grazed cattle from spring to fall those years. Then Garber claims he had a one-year lease for the grazing season of 1961 and that he grazed cattle on the Brinsmade place that season.

This, as far as the evidence goes, leaves the Brinsmade place unoccupied and the Hidden Valley road unused by persons therefrom during the period from the fall of 1961 until the Connells made their purchase in June of 1963. In that connection, this question and answer during the cross-examination of Connell is significant:

"Q Well, you said your first contact was in 1959, for two years, then you skipped, and then you came back in the fall of '63 and entered in on an agreement? A. That's correct. So I leased the properties starting in '59."

■ Thus, the evidence fails to account for the year 1962; and as we have previously indicated plaintiffs have been entirely excluded from use of the roadway since September, 1970. We also indicated

---

4. Rust v. Engledow, Tex.Civ.App., 368 S.W.2d 635, 638; Jansen v. Sawling, 37 A.D.2d 635, 322 N.Y.S.2d 399–401; Cope v. Cope, 158 Mont. 388, 493 P.2d 336, 339; 28 C.J.S. Easements § 13, pp. 648–650.

the situation for a year and a half before that was not clear. In any event, use from June, 1963, to September, 1970, would not make a continuous ten-year period.

Concerning the year and a half before September of 1970, Dr. Connell was asked about the use of cutters which he said were purchased to make entrance in to the property in September of 1970. When asked how he knew the gate was locked, he replied: "Because we had been hassling about it for a year-and-a-half." Asked if it had been locked that year and a half, Connell answered: "On occasion. We went through on occasions when it wasn't locked." Yeckel also testified the gates had been locked off and on since he moved to Hidden Valley in 1968.

The evidence discloses without contradiction that in August, 1968, Ralph Blaney followed his brother Dan Blaney as foreman for Hidden Valley. On cross-examination Connell was asked if it is not true that, when Ralph Blaney followed his brother, the gate was kept locked. To this question, Connell replied:

"Yes; it has been locked since Ralph has been there."

Even when the evidence is construed in the light most favorable to plaintiffs, it still is impossible to say plaintiffs have carried their burden of proving their use of the road in question, from August, 1968, to September, 1970, was uninterrupted, continuous, exclusive, adverse, or under claim of right. This, then, adds to our conclusion that plaintiffs have not shown continuous adverse use for any ten-year period.

Therefore, for the two reasons we have discussed in this opinion, we say plaintiffs failed to carry their burden of proof and the judgment must be reversed. This disposition makes it unnecessary for us to discuss any of the questions raised in connection with third and fourth party defendants.

Reversed.