Albert D. GREGORY, Gary W. Gregory,
and Ronald W. Gregory, Appellants
(Defendants),

v.

William A. SANDERS and Nadine
Sanders, Appellees (Plaintiffs).

No. 5451.

Supreme Court of Wyoming.

Nov. 3, 1981.

Rehearing Denied Nov. 24, 1981.

Walter C. Urbigkit, Jr., Urbigkit & Whitehead, P.C., Cheyenne, signed the brief and appeared in oral argument on behalf of appellants.

Arthur T. Hanscum, Pence, MacMillan & Hanscum, Laramie, signed the brief and appeared in oral argument on behalf of appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

The ultimate issue in this appeal is the validity of appellants' claim of a prescriptive right to use of roadways owned by appellees. Appellees filed an action in the district court to enjoin use by the appellants. The district court held that appellants had no such right and enjoined further use.[1] Appellants in their statement of issues merely listed topics to be discussed. Appellees rephrase appellants' positions into the form of questions which, with some editing, we can resolve:

1. Is Nadine Sanders a proper party in the litigation and, if not, what is the consequence thereof?

2. Is William A. Sanders a real party in interest with respect to the subject matter of the litigation?

3. Does the evidence show the requisite elements for the acquisition by defendants of an easement by prescription over the roads in the North Fork Subdivision; i.e., did defendants show that they or their predecessors in interest used (a) the private roads contiguous to the North Fork Subdivision roads, (b) continuously or uninterruptedly, and (c) adversely for a ten-year period of time?

4. Is the evidence sufficient to show that continued use of the North Fork Subdivision roads would cause irreparable harm such as to justify injunctive relief?

5. Is the judgment prohibiting Defendants from using the North Fork Subdivision roads to gain access to their property sustainable by the evidence as disclosed by the record in the trial court?

We will affirm.

A rough sketch of the area, not to scale, may help to understand the facts:

1. The court's enjoinder:
"IT IS FURTHER ORDERED that Plaintiffs' Petition for Preliminary and Permanent Injunction be, and is hereby, granted, and that the Defendants, and each of them, are hereby perpetually enjoined from using or traveling across the aforesaid lands or private roadways in the North Fork Subdivisions * * *."
While appellees prayed for money damages, none were awarded. There is no cross-appeal.

ROADS ----

The road access to which appellants (Gregorys) lay claim is across from south to north what is shown as North Fork River Homesites near Centennial. The trial court's Findings of Fact, which we now summarize, disclose that for some years the Gregorys and their predecessors in title off and on gained access through the Sanders' property. As noted by the trial court, the Sanders subdivided their property and in doing so created different types of roads:

"9.   * * * a) Roads dedicated to the public in North Fork Subdivision Numbers 1, 2 and 3;  b) real property owned by Plaintiffs set aside for the benefit of North Fork Homesite Owners as a private access road between Subdivision Numbers 4 and 7, and 5 and 6;  and c) access road by reservation in deed, or by easement in Subdivision Numbers 6 and 8 respectively on the easterly edge of said subdivision and continuing in a generally northwesterly direction until a point at which a road enters Subdivision Number 3."

Suffice it to say that the roads dedicated to the public do not interconnect so that

there is a continuous route over public roads through the subdivision to the Gregory lands from Highway 130 at the south end of the Sanders' property, which Highway 130 passes through. The Gregorys do have access to their lands over what is known as the Rainbow Valley Lodge Road which enters their land from the west, north of the Sanders' land. Beginning in 1975, the Gregorys nevertheless used private roads going through the various subdivisions in conjunction with the public roads to reach their lands. On or about October 21, 1977 and November 8, 1977, each of the Gregorys were notified that they were not to use the Sanders' private roads in the North Fork Subdivision.

Because of the Gregorys' persistence in use of the private roads, the Sanders brought the action in the district court, from which case this appeal is now taken, to enjoin the Gregorys from such use.

Other facts will be set out as required in disposition of the issues.

I

The Gregorys attach some significance to the fact that Nadine Sanders shows up as a party plaintiff (an appellee). Her name was not on the Petition for Preliminary and Permanent Injunction as a party but first appears as a signatory principal on the Bond on Preliminary Injunction at which time she was also included as a plaintiff in the caption on a stipulation regarding the uses by the Gregorys of certain roads during pendency of the action. Counsel for the Gregorys have included the name in some of their filings as well. It does not appear that any objection or motion to strike was ever made during any proceedings in the district court. The Gregorys attach to their brief, as an appendix, the form of warranty deed used by the Sanders in the sale of lots within the various subdivisions. It shows Nadine Sanders, grantor, as the wife of appellee William A. Sanders and provides for her signature.

■ While fee title to the land out of which the various subdivisions were carved was in the name of William A. Sanders as sole owner, this court takes judicial notice of the practice within this state of the wife joining in the conveyance by the husband of his separate property as an assurance that no claim of a homestead right will be later made by the wife.[2]

■ We see no problem in this de minimis matter and hold that since the question was not raised in the district court and is not a candidate for consideration as plain error, we will not give it our attention on appeal. *City of Rock Springs v. Police Protection Association*, Wyo., 610 P.2d 975 (1980). Furthermore, the Gregorys have presented us with no authority or cogent argument justifying our consideration. *Scherling v. Kilgore*, Wyo., 599 P.2d 1352 (1979).

II

■ It is the contention of the Gregorys that the grant of access road rights by conveyances, plat and "behavior" left no interest in Sanders as grantor sufficient to afford him real-party-in-interest status.

However, the evidence discloses that the Sanders retained title to certain lands forming part of the route the Gregorys claim a right to use. It is conceded that Sanders granted the residents of the subdivision easements to use various roadways which

---

**2.** Section 34-2-121, W.S.1977:

"Every owner or occupant of a homestead as established herein may voluntarily sell, mortgage, or otherwise dispose of or encumber the same; provided the instrument of writing conveying, mortgaging, disposing of or encumbering such homestead shall contain in substance the following words: 'Hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state,' and shall be freely and voluntarily signed and acknowledged by the owner and the spouse of the owner of said homestead. The foregoing provisions shall not be applicable to nor shall compliance therewith be required for full legal effectiveness of any conveyance of property directly from husband to wife."

It is noted that the release and waiver provision did appear in the deed form referred to.

he agreed to create for purchasers.[3] It should also be noted that appellees retained ownership to a buffer strip of land upon which the southern entrance to the subdivisions is located. The evidence discloses that the purpose of ownership retention was to assure privacy to subdivision purchasers. The law is clear that the owner of a servient estate has a right to object to an unauthorized use of an easement. 25 Am. Jur.2d Easements and Licenses, § 72 (1966).

The question that remains is whether all roadways—both those on appellees' retained land and any shown on the subdivision plats—were dedicated to the public. If so, the Sanders would have in effect given the public an easement and could not complain about the Gregorys' use of the road.

To determine whether a public dedication occurred, the plats filed with the county clerk's office must be considered. After doing so, the district court judge found the roads shown on and contained in North Fork Subdivision Nos. 1, 2, and 3 were dedicated to the public. These subdivisions constitute the northwest one-third of the area denoted as the North Fork River Homesites in the diagram, supra. The roads in the remainder of the development were found by the trial judge in his findings as not dedicated to public use:

"11. The Plaintiffs' Subdivision Number 4 was established in 1964. All roads and public ways, as was shown on the plat of the subdivision, were dedicated to the public's use. The road, entitled access road, despite the fact that it is shown on the map, is not within the plat nor the dedication and by reason thereof, was not dedicated to the public.

"12. Plaintiff did not intend to dedicate the access road shown on the map of Subdivision Number 4 when it dedicated the platted area within Subdivision Number 4.

"13. North Fork Subdivision Number 5 was established in 1965. The owners dedicated to the public use such roads and

public ways as were shown on the plat. However, no roads were shown on the plat. A road that is contiguous to Subdivision Number 5, on its east side, was constructed during 1963 and 1964.

"14. The North Fork Subdivision Number 6 was filed in 1966. The dedication provided that such roads and public ways that existed were dedicated to the public use. However, no roads were depicted on the plat. The subdivision road that is contiguous to Subdivision Number 5, and which was constructed during 1963 and 1964, served the homesites that were located directly east of Subdivision Number 5. A road was built to serve the homesites on the eastern side of Subdivision Number 6 in 1969 and 1970. An additional road that runs from east to west and bisects Lots No. 9 and 10 in Subdivision Number 6 was constructed between 1969 and 1970.

"15. Subdivision Number 7 and Number 8 were dedicated in 1969 and 1970 respectively. The subdivisions as filed do not indicate any roads and there is no dedication of roads to the public."

The filing of the plats was done pursuant to § 34–113, W.S.1957:

"Every original owner or proprietor of any tract or parcel of land, who has heretofore sub-divided, or shall hereafter subdivide the same into three or more parts for the purpose of laying out any town or city, or any addition thereto, or any part thereof, or suburban lots, shall cause a plat of such sub-division, with references to known or permanent monuments, to be made, which shall accurately describe all the sub-divisions of such tract or parcel of land, numbering the same by progressive numbers, and giving the dimensions, and length and breadth thereof, and the breadth and courses of all the streets and alleys established therein. Descriptions of lots or parcels of land in such sub-divisions, according to the number and designation thereof, on said plat contained, in conveyances, or for the purposes of taxa-

---

3. The pertinent provision of the warranty deed to each of appellees' grantees:

"10. Initially Grantors will provide main access road to Grantee ____ property, and thereafter Grantee ____ agree ____ to unite with other homesite owners in maintaining access road, and agree ____ to build and maintain any necessary or desired road on ____ own property."

tion, shall be deemed good and valid for all intents and purposes. The duty to file for record a plat, as provided herein [§§ 34–112 to 34–115, 34–117 to 34–126], shall attach as a covenant of warranty, in all conveyances of any part or parcel of such sub-divisions by the original owners or proprietors, against any and all assessments, costs and damages, paid, lost or incurred by any grantee, or person claiming under him, in consequence of the omission on the part of said owner or proprietors to file such plat."

The effect of dedicating streets to public uses is discussed in § 34–115, W.S.1957 as follows:

"The acknowledgment and recording of such plat, is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets, or other public use, or is thereon dedicated to charitable, religious or educational purposes."

█ "It is well recognized that in the construction of deeds, they must be considered as a whole and the intent of the parties gathered from the plain and unambiguous language contained therein." *Dawson v. Meike*, Wyo., 508 P.2d 15, 18 (1973). However, "[i]f the intention of the grantor does not readily appear from the instrument, then the language used is to be read in the light of the surrounding circumstances." *First National Bank and Trust Company of Wyoming v. Finkbiner*, Wyo., 416 P.2d 224, 229 (1966). When extrinsic evidence becomes admissible to prove the original intent, a question of fact is presented.

█ In this case Mr. Sanders testified that his intent had always been to keep the roads private. We hold that since there was ambiguity in the plats as to whether

the roadways shown (in plat number 4) or not shown (in plat numbers 5 and 6) were dedicated to public use, a question of fact existed as to the intent of the drafters of the plats. Doubtful situations must be submitted to a trier of facts. *Gray v. Fitzhugh*, Wyo., 576 P.2d 88 (1978). There was evidence supporting the district court's finding that no dedication was intended. On appeal, findings of fact are presumptively correct and must not be set aside unless clearly erroneous or contrary to the great weight of evidence. *Diamond Management Corporation v. Empire Gas Corporation*, Wyo., 594 P.2d 964, 966 (1979). We are not free in this appeal to question that finding of fact since it is supported by evidence and must rule that Sanders was a real party in interest and able to maintain this action.

### III

The next question we consider is whether the appellants failed to establish at trial the presence of the requisite elements for the acquisition of a prescriptive easement which would entitle them to continue the use of the North Fork Subdivision roadways.

█ The law in Wyoming is clear,

" * * * There can be no doubt that a party claiming a right of way by prescription has the burden of proving his use was adverse, under color of title or claim of right, and such as to put the owner of the servient estate on notice that an adverse right was being claimed. If the use is permissive, no easement can be acquired." (Footnotes omitted.) *Yeckel v. Connell*, Wyo., 508 P.2d 1200, 1202 (1973).[4]

The use must also last for at least ten years before the title or right is vested by § 1–3–103, W.S.1977.[5] Prescriptive ease-

---

4. See also, *Gray v. Fitzhugh*, supra; *Stock v. Roebling*, Wyo., 459 P.2d 780 (1969); *White v. Wheatland Irrigation District*, Wyo., 413 P.2d 252 (1966); *Haines v. Galles*, 76 Wyo. 411, 303 P.2d 1004 (1956); *City of Rock Springs v. Sturm*, 39 Wyo. 494, 273 P. 908, 97 A.L.R. 1 (1929); *McIlquham v. Anthony Wilkinson Live Stock Co.*, 18 Wyo. 53, 104 P. 20 (1909); Note,

"Prescriptive Acquisition of Easements in Wyoming," 12 Wyo. L.J. 59, 62 (1957).

5. Section 1–3–103, W.S.1977, provides:

"An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten (10) years after the cause of such action accrues."

ments are not favored in law. *Gray v. Fitzhugh,* supra, 576 P.2d 91. Since appellants were the parties claiming a prescriptive right, it was their burden to establish all of the requisite elements.

The district court found that the appellants had failed to establish an open, continuous, uninterrupted, and adverse use for a period exceeding ten years. The court acknowledged that the requisite use had only been proved for the period of time commencing with 1975 until the lawsuit was filed in 1979. It also noted prior use by the appellants' predecessors in interest, but concluded that this use was not sufficient to establish a prescriptive right.

■ It is also the appellants' burden on appeal to make an affirmative showing of error. *Spriggs v. Copenhaver,* Wyo., 459 P.2d 203 (1969). Their brief assumes that the use by their predecessors in interest was sufficient to create a prescriptive easement. Nowhere does the brief discuss why the appellants believe the district court was wrong. In actuality, the record supports the district court's finding in that the use appears to have been sporadic and wandering over no defined trail or road and not in a fashion as would put the owner of the servient estate on notice that an adverse right of access was being claimed. A prescriptive right of way cannot be acquired to pass over land in a helter-skelter mode. The right must be confined to a specific way or a definite, precise line which has been used as a right of way. Anno., Acquisition of right of way by prescription as affected by change of location or deviation during prescriptive period, 80 A.L.R.2d 1095, Sec. 2, 1096. Accordingly, appellants have failed to meet their burden and the district court's finding must be affirmed.

## IV

Our fourth inquiry is whether there was sufficient evidence supporting the district court's finding that continued use of the North Fork Subdivision roads by appellants

would cause appellees irreparable harm such that injunctive relief was warranted.

■ It has been said that "[a]n injury is irreparable, within the law of injunctions, where it is of a 'peculiar nature, so that compensation in money cannot atone for it.' *Gause v. Perkins,* 56 N.C. 177 (1857)." *Frink v. North Carolina Board of Transportation,* 27 N.C.App. 207, 218 S.E.2d 713, 714 (1975). Money cannot be a substitute for the privacy appellees sought to create for purchasers of lots within the subdivisions. There is also irreparable damage in the case of a repeated or continuing trespass where multiple actions may otherwise be necessary. Thus, an injunction is treated as the proper remedy in order to avoid such a multiplicity of lawsuits. *Collins v. Freeland,* 12 N.C.App. 560, 183 S.E.2d 831 (1971); *Kennedy v. Bond,* 80 N.M. 734, 460 P.2d 809 (1969).

"Equity extends appropriate injunctive protection to property rights and interests of every description, whether the property is real or personal, although it is more frequently used in the case of real property. Jurisdiction to prevent threatened disturbance of the peaceful use and enjoyment of real property is inherent in a court of equity, and injunction is a proper and ordinary remedy for the protection of owners in the enjoyment of their rights in real estate, regardless of what those rights may be. * * * " (Footnotes omitted.) 42 Am.Jur.2d Injunctions, § 71, p. 815 (1969).

Here the district court found that there was occurring a repeated and continuing trespass; and accordingly, it entered an injunction barring the appellants from traversing appellees' land. Based on the record, we cannot disagree and must uphold the district court's action.

## V

■ Finally we must determine whether the record supports the judgment prohibiting the appellants' continued use of the North Fork Subdivision roads as a more convenient access to their property. Convenience is not an element in gaining a pre-

scriptive right. On appeal we examine the evidence in a light most favorable to the prevailing party and resolve all conflicts in evidence in the appellee's favor. *Gray v. Fitzhugh*, supra, 576 P.2d 88. Further, the judgment of a trial court is presumed correct. *Spriggs v. Copenhaver*, supra, 459 P.2d 203. The evidence in this case shows appellees to be the owner of the land upon which the road in question is situated. They have granted certain residents in the area the right to use these roadways. Appellants were not granted such a right, nor has such a right accrued to their benefit under the doctrine of prescriptive easements. They were unable to establish at trial an adverse, continuous, uninterrupted use for a ten-year period and so have failed in their proof.

Nevertheless, it appears that the injunction entered by the district court is overly broad. It prohibits the appellants from using the private roadways even if invited by the homeowners in the subdivisions who have the right to allow guests, employees or other invitees on the roads. The order should only bar appellants from any unauthorized use, and we remand the case to the district court to allow that court to make an appropriate modification of the injunction to that end.

Affirmed, but remanded to the district court for modification of the injunction consistent with this opinion.

ROONEY, Justice, dissenting.

The majority opinion in this matter is in error in more than one respect. However, it does recognize, properly, that a grant must be construed as a whole and effect given to the plain and unambiguous language contained therein; and that if such is ambiguous, the intent of the parties can be ascertained from surrounding circumstances. *Dawson v. Meike*, Wyo., 508 P.2d 15 (1973); *First National Bank and Trust Company v. Finkbiner*, Wyo., 416 P.2d 224 (1966).

In this case, the language of the subdivision instruments and of the deeds to subdivision lots is plain and unambiguous in reflecting (1) that the roads in the subdivisions which constitute the North Fork River Homesites (hereinafter referred to as homesites) are dedicated to public use, including the use by appellants, and (2) that appellees are not the real parties in interest with reference to contesting the use of homesite roads. Further, if there is any ambiguity in such instruments and deeds, the only proper evidence and the application of the accepted rules of construction establish (1) the intent of the parties to dedicate all of the roads in the homesites to public use, including the use by appellants, and (2) the intent of the parties to divest appellees of that control of the roads necessary to make them real parties in interest in this case. Finally, the uncontroverted facts in this case are such as to dictate a conclusion (1) that the homesite roads are for public use, including the use by appellants; (2) that appellees are not the real parties in interest with reference to an action to determine the nature of the use by appellants of the roads in homesites; and (3) that the injunction issued in this case is improper.

## IF AMBIGUOUS

Before establishing that the same conclusion results when the unambiguous and plain language of the subdivision instruments and deeds is applied to the issues here presented, I note that the circumstances surrounding this matter emphatically reflect that the intent of the parties to the subdivision instruments and to the deeds to the lots of the subdivision was to make the homesites roads connecting appellants' land with the BLM land and the highway subject to public use, including the use by appellants. Indeed, so completely is such intention manifested, the corollary follows that appellees do not have sufficient individual interest in the roads to qualify as real parties in interest and to maintain this action.

The following sketch, which is in more detail than that in the majority opinion, is helpful in understanding the sequence in which the several subdivisions became part of homesites and the effect thereof on the status of the roads from the several subdivisions to the highway.

APPELLANTS

#1

#2

#3

#8

#7

#4

Ridge Road

#6

#5

BLM

N

NORTH FORK
RIVER HOMESITES

——————— SOLID LINE = SUBDIVISION
BOUNDARY

— -— -— BROKEN LINES = ROADS ON
SUBDIVISION
PLATS

HIGHWAY
1/2 MI.

Access to homesites from the highway is from the south. However, the subdivisions in homesites were developed from the north to the south. Thus, after subdivision 1 was established, access to it must have been through the area in which subsequently established subdivisions were to be—probably over the trails which appellants testified were used to gain access to their property from a time dating back to near the turn of the century.[1] The map of homesites attached by appellees to the complaint re-

1. A finding of fact by the trial court was "[t]hat for some years Defendants and their predecessors in title gained access to their property through Plaintiffs' property."

flects a trail through the area, labeled an "old trail" and noting its location to be approximate. Such access to subdivision 1 must have been intended by appellants when they developed subdivision 1.

Appellees acknowledge that the roads in subdivisions 1, 2, and 3 were dedicated to the public use after these three subdivisions were established. The public would have had to traverse land in some of the yet to be established subdivisions to reach the dedicated streets from the highway—again probably traversing the trails reflected on the map attached by appellees to their complaint. When appellees later developed roads which connected roads in subdivisions 1, 2, and 3 to the highway, the obvious intention was for use of such developed roads for public access between the highway and the roads in subdivisions 1, 2, and 3, which were dedicated to, and intended to be used by the public.

A further expression of this intention is in the fact that the roads in the later developed subdivisions did not dead-end at the boundaries of subdivision 3. Rather they met the roads in subdivision 3 which had been dedicated to the public.

One who subdivides his property and dedicates roads therein to the use of the public must certainly intend such roads to be used by the public. When the only access to the roads is over other trails or roads *on his property*, his intent is just as certainly that such access be used by the public.

Whether or not the roads in the south portion of homesites (south of subdivision 3) were dedicated or not, and whether or not they were on subdivided land, their location and termini with relation to the dedicated roads in subdivisions 1, 2 and 3 were such to manifest an intent to provide access between the highway to such dedicated roads.

All of the circumstances surrounding the homesite development establish the intention to promote access over homesite roads from the highway to the dedicated roads in subdivisions 1, 2, and 3. From that and from the language in the deeds from appellees to those purchasing lots in homesites [2] not only is such intention further fortified but the lack of sufficient interest in the subject matter by appellees to maintain this action is indicated. Such language reflects an intention by appellees to construct the roads in homesites after which control over them shall be in the purchasers of the subdivision lots.

*There is nothing in the record to indicate a contrary intent.* The majority opinion points to testimony by appellee William A. Sanders to the effect that "his intent had always been to keep the roads private" as determinative. Not only is such testimony suspect as self-serving, but it is contrary to the intention expressed by his acts.

" * * * The motive for dedication, however, is immaterial, and, if the owner's intent was that the land dedicated should be used by the public generally, such an intent will be allowed its proper and pertinent force, although the principal motive might have been to oblige and accommodate an individual.

*"The intention to dedicate to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts.* It is not always necessary that an actual intention should exist in the mind of the owner at the time of the alleged dedication. *If the intention is clearly expressed by his open acts and visible conduct, the public and individual citizens may act on it*; and the fact that the owner may have entertained a different intention from that manifested by his acts or declarations, or that in making the dedication he may have acted under a mistake of fact, is of no consequence; *and if the owner showed an intent he cannot defeat the effect of his acts by subsequently stating that he did not intend to make a dedication.*" (Emphasis added.) 26 C.J.S. Dedication, § 11, pp. 418–419.

2. The following language was in each deed: "10. Initially Grantors will provide main access road to Grantee ____ property, and thereafter Grantee ____ agree to unite with other homesite owners in maintaining access road, and agree ____ to build and maintain any necessary or desired road on ____ own property."

" * * * Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. [Citation.]" *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980).

The motive of appellees in attempting to preclude use of the roads by the three appellants is not indicated. The testimony reflects many people other than lot owners in homesites use the roads. Appellees' motive in not precluding use by such other people is likewise not in the record.

There was testimony that appellants could exit their property by use of Rainbow Valley Road to the west. However, the testimony was that such road was closed by snow for all of the winter months. Testimony was to the effect that appellants had heavy snow removal equipment, and they could probably open Rainbow Valley Road with it if the snow came when they were on the premises where the equipment was available.

If there is ambiguity in the subdivision instruments and deeds, the intention as reflected in the surrounding circumstance was to provide access to the public, including appellants, between the highway and subdivisions 1, 2, and 3 by means of the other roads in homesites. Further, such instruments and deeds reflect the intention to divest appellees of that control of the roads in homesites necessary to give appellees the status of real parties in interest.

## IF UNAMBIGUOUS

In fact, the subdivision plats are plain and unambiguous in designating the roads thereon to be for public access. Such factual determination is conclusive. As already noted, appellees acknowledge the roads in subdivisions 1, 2, and 3 to be dedicated to the public. The plats of each contain similar statements relative to dedication of the roads.[3] The three subdivisions were established in 1961 and 1962.

The following appears in the notarized statement of appellees on the plat for subdivision 4:

" * * * the surveying and subdivision of the lands described above *and as appear on this Plat*, to be known as North Fork Subdivision No. 4, * * * and that they do hereby dedicate to the public use such roads and public ways *as shown on the foregoing Plat. * * * *" (Emphasis added.)

The plat shows the access road extending the full length of the subdivision on the northeast side. The metes and bounds description which is set forth on the plat as bounding the subdivision does not include the road area. The trial court made a *legal* determination that the failure to include the roads in the metes and bounds description excluded them from the dedication. Such determination places priority on the metes and bounds description rather than on the plat itself.

As quoted in the majority opinion, § 34–115, W.S. 1957 provides:

"The acknowledgment and recording of such plat, is equivalent to a deed in fee simple of such portion of the premises platted *as is on such plat* set apart for streets, or other public use, * * *" (Emphasis added.)

The descriptive matter on the plat, although required, is not part of the plat itself.

" * * * word 'plat' signifies a subdivision of land into lots, streets and alleys, marked upon the earth, and represented upon paper. * * *" (Footnote omitted.) *Monaco v. Bennion*, 99 Idaho 529, 585

**3.** The following appears in the notarized statement of appellees on the plat for subdivision 1:

" * * * they do hereby dedicate to the public use said roads and public ways as shown on the foregoing plat."

The following appears in such statement on the plat for subdivision 2:

" * * * they do hereby dedicate to the public use said roads and ways as shown on the foregoing plat. * * *"

The following appears in such statement on the plat for subdivision 3:

" * * * they do hereby dedicate to the public use such roads and public ways as shown on the foregoing plat. * * *"

P.2d 608, 611 (1978). See *Northern Indiana Public Service Company v. McCoy*, 239 Ind. 301, 157 N.E.2d 181, 184 (1959). Furthermore, the trial court's determination does not give effect to the specific language in the dedication statement. Such language refers to and dedicates to public use, the roads "shown on *the foregoing plat.*"

The majority opinion notes that in construing instruments, they must be considered as a whole. This requires affording meaning to all of the language used, if that can be done and a reasonable construction achieved. *Northern Gas Company v. Town of Sinclair*, Wyo., 592 P.2d 1138 (1979). We should, thus, give effect to the language in the notarized statement to the effect that the roads "shown" were dedicated to the public as well as to the fact that such roads were plainly set out on the plat. Each of these would be completely superfluous under the construction given by the trial court and by the majority opinion.

Of interest, is the fact that appellees acknowledged the road on the plat of subdivision 4 to be dedicated to the public by so designating it on the map attached as an exhibit to their complaint.

Subdivision 5 was established in 1965. The access road extending its full length on the northeast side had been previously constructed in 1963 and 1964. The plat for subdivision 5 does not reflect this road, but the notarized statement of appellees on the plat recites:

" * * * they do dedicate to the public use *existing* roads and ways." (Emphasis added.)

Giving recognition to the change in wording from that used on plats for previous subdivisions, i. e., "as shown on the foregoing plat" to the wording on the plat for subdivision 5, i. e., "existing roads", and attempting to give meaning to all of the language used, the obvious conclusion is that the "existing" road along the northeast boundary of subdivision 5, and necessarily used to gain access to the lots in subdivision 5 and to previously established subdivisions 1, 2, 3, and 4, was dedicated to the use of the public.

Accordingly, the plain and unambiguous language of the instruments establishing subdivisions 4 and 5 dedicate the roads in and adjacent thereto to the public and provide a means of access between the highway and the dedicated roads in subdivisions 1, 2, and 3. Therefore, appellants have access from the highway to their property over these dedicated roads.

The plain and unambiguous language of the deeds to the purchasers of the lots in homesites,[4] coupled with the dedication to the public of the roads between the highway and subdivisions 1, 2, and 3 place the roads in subdivisions 1, 2, 3, 4 and 5 out of the control of appellees for the purpose of giving them real party in interest status to maintain this action. The purpose in the requirement that an action be brought in the name of the real party in interest (Rule 17(a), W.R.C.P.) "is to assure that an action is brought by the present owner of the right sought to be enforced." *Wyoming Wool Marketing Association v. Urruty*, Wyo., 394 P.2d 905, 907 (1964).

The ones to be concerned with the travel on the roads of the subdivisions are those who live along those roads and who are charged with maintaining them, i. e., the ones who own lots in homesites. These people have formed an association. The chairman of the executive board of the association testified that the association had taken no action to restrict appellants use of the roads. In fact, several of the association members have regularly asked and obtained appellants' assistance in the voluntary use of their equipment to remove snow from homesites roads. The chairman of the association testified that relatives and friends of the residents use the roads on a regular basis and that tourists occasionally use the roads. Appellees are not real parties in interest to bring an action for an injunction to prohibit appellants use of the roads in homesites.

---

4. See fn. 2.

## FACTUAL CONCLUSION

The majority opinion addresses the subdivision lands in this case in terms of easements granted the lot owners in homesites by appellees.[5] It suggests that the servient estate (appellees) has a right to object to an unauthorized use of the easement by appellants. The citation in the majority opinion to 25 Am.Jur.2d Easements and Licenses, § 72, is to a paragraph which concerns the right of action by the servient estate against the dominant estate, i. e., the ones to whom the easement was given (lot purchasers in this instance), and it is not truly applicable to the situation in this case. In any event, appellees here contend that appellants never acquired an easement. If this contention were accepted, the dominant-servient estate relationship would not exist between appellants and appellees.

Assuming for the purpose of argument that the use of the roads by appellants was unauthorized, i. e., that they were not dedicated to the public, the situation would be similar to that in which A regularly cuts across the corner of B's lot. After B sells the lot to C, C does not object to A's crossing but B brings an injunction action to prevent it. B would not be the proper party to bring the action.

An inspection of the homesites sketch, supra, reflects the impropriety of appellees claim of ownership to a narrow string-like piece of land, consisting of the roads through homesites, over which many others travel, but over which they allege the right to keep three people (appellants) from traveling. They would not be traveling over a portion of appellees' servient estate. They, and all the others in the area, would be traveling over the entire land claimed to be owned by appellees. The situation does not have any element of the traditional question concerning the privilege of using a right-of-way.

Finally, the absurdity of appellees' claim is spotlighted by the injunction against appellants use of the roads in homesites. The testimony was that many others use such roads including tourists and construction people going beyond the boundaries of homesites. The testimony was that friends and relatives of lot owners in homesites could, and did, use the roads. But if one of the lot owners in homesites invited one of the three appellants to his home, the invitee could not go without violating the injunction as issued by the trial court—unless he did so by helicopter. No longer can the owners of the lots in homesites request, and obtain help from appellants in preventing a snowbound situation by having appellants use their special equipment for removal of snow.

The change directed by the majority opinion to be made in the injunction whereby any of the homeowners can authorize appellants' use of the roads only adds to the absurdity. Obviously appellants will obtain a permanent invite from one of the homeowners to use the roads. The result from the standpoint of this lawsuit is twofold: First, it is tantamount to an acknowledgment that the injunction is worthless and should not exist in the first instance. Second, it more than emphasizes the inaccuracy of the holding by the majority that the homeowners are not the real parties in interest in this case. If they are recognized as the ones properly to authorize use of the roads, they are the ones who properly should contest the unauthorized use thereof—not the appellees.

Common sense and equity dictate against the issuance of an injunction to prevent three people from traveling on roads dedicated to the public and intended for public use (as reflected by all of the evidence) and actually traveled by other members of the public at their option—all at the behest of appellees who no longer are the real parties in interest with respect to the roads, and without any objection from the lot owners of homesites to appellants use of the roads, such lot owners being the real parties in interest with respect to the road usage.

---

5. An issue other than that as to whether or not appellants had a prescriptive right or easement to cross appellees lands, which is a question I find unnecessary to reach.

I would reverse and remand for entry of judgment in favor of appellants against appellees on the issues of the complaint and with direction to dismiss the counterclaim inasmuch as the roads in homesites have been dedicated to use of the public.